Grover C. Peters - 037380
FOUNTAIN HILLS MEDICAL CENTER
9700 N. Saguaro Blvd
Fountain Hills, Arizona 85268
Telephone: (509) 339-5802
Fax: (509) 315-2229
grover@fhmcaz.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FHMC, LLC, an Arizona limited liability company; and FHMC Clinic, LLC, an Arizona limited liability company, | No. _____ |
| Plaintiffs, | **PLAINTIFFS' ORIGINAL COMPLAINT** |
| v. | Jury Trial Demanded |
| Blue Cross and Blue Shield of Arizona, Inc., an Arizona corporation; XYZ entities 1-100 inclusive, | |
| Defendants. | |

FHMC, LLC and FHMC CLINIC, LLC (collectively "FHMC" or "Plaintiffs") allege, and state as follows for their Complaint against Blue Cross and Blue Shield of Arizona ("BCBSAZ" or "Defendant"):

### INTRODUCTION

1.    This action arises out of a dispute concerning the reimbursement rate for emergency care providers for services they have provided and continue to provide to patients covered under the health plans underwritten, operated and/or administered by BCBSAZ.

2.    FHMC is an out-of-network outpatient treatment center licensed to operate a freestanding emergency room and provide imaging, laboratory, medication and urgent care services.

3.    The medical center is not contracted with any insurance company and accepts and cares for all patients presenting for emergency care regardless of insurance coverage.

BCBSAZ is a national health insurance company registered to sell health insurance throughout the United States including Arizona.

4.     FHMC's claims for damages entail two Claims Periods:  March through December 2021, during which BCBSAZ sent emergency room claim payments directly to the patients, and unpaid and underpaid claims; and January 2021 through the present date on still ongoing, during which BCBSAZ, while not sending claim payments directly to patients, is now not paying or underpaying claims, delaying processing of claims for months well beyond the 30 days permitted by law and then overloading FHMC with large batches of denials and underpayments.

5.     Each patient registering to receive medical services from the emergency room signs an assignment of benefits that allows BCBSAZ to send all payments to FHMC and not directly to the patients.  However, from March-December 2021 BCBSAZ knowingly and willfully ignored the assignment of benefits and remitted payments due to FHMC directly to the patients.  In many instances, these patients did not turn over the payments to the medical center as required in the assignment but instead kept the payments for themselves. BCBSAZ has been notified of this issue on more than one occasion and continues to fail to send payments, as required, to the medical center resulting in financial loss to the medical center exceeding $314,493.01.

6.     Since the No Surprises Act ("NSA") went into effect in January of 2022, BCBSAZ has implemented a dramatic decrease in amount paid for emergency services provided by FHMC now that they are required by law to pay FHMC directly. BCBSAZ unlike other insurance payors are not utilizing the qualifying payment amount ("QPA") guidelines set forth by the NSA.  BCBSAZ is now remitting only approximately 5-7% of the billed charges since 2022 compared to the average of 47% of billed charges they paid directly to patients in 2021 prior to implementation of the NSA.

7.     BCBSAZ has manipulated, and continues to manipulate, their payment rates to defraud FHMC and deny them reasonable payment for services which the laws require.

**PARTIES**

8.    FHMC opened its doors on April 5, 2021 in Fountain Hills, Maricopa County, Arizona as a physician-owned Outpatient Medical Center with a 24-hour freestanding Emergency Department and Medical Clinic offering up to 24-hour medical observation beds/rooms, 24-hour imaging services, 24-hour labs services, medication services and Urgent Care services. The Medical Center serves both children and adults and does not discriminate based on insurance plans. FHMC's primary focus is to offer quality emergency healthcare services to the residents of Fountain Hills and surrounding areas close to home.

9.    BCBSAZ is a domestic nonprofit corporation and an independent licensee of the Blue Cross Blue Shield Association doing business in and incorporated under the laws of the State of Arizona. It is a commercial full insured business (including ACA plans both on and off exchange) and self-insured (including ERISA and non-ERISA plans). BCBSAZ provides health insurance and related services to more than 1.9 million Arizona residents and is the largest locally based healthcare insurer with a revenue of approximately $617.8 million per year. BCBSAZ is one of eight insurers providing Marketplace Plans and the only one that provides coverage statewide. BCBSAZ is the plan administrator, claims administrator and/or insurer for the health plans and insurance policies at issue in this lawsuit. BCBS also administers out-of-state Blue Cross Blue Shield plans where emergency services are rendered within the state of Arizona.

10.    Defendants XYZ 1-100's true names are unknown to FHMC. Plaintiffs will seek leave to amend pleadings and related documents upon discovery of the true names of any additional defendants.

11.    At all relevant times, Defendants acted through their agents, contractors, and/or employees and therefore are liable for the actions of those agents, contractors, and/or employees under common-law agency principles and/or the doctrine of respondeat superior.

**JURISDICTION AND VENUE**

12.    This Court has personal jurisdiction over the parties because FHMC submits to the jurisdiction of this Court and the Defendant systematically and continuously conducts

business in Arizona and otherwise has minimum contacts with the District of Arizona sufficient to establish personal jurisdiction over them.

13.     Some of the subject claims asserted involve insurance plans under the Federal Employee Program ("FEP") which arise under the Federal Employee's Health Benefits Program ("FEHBP") which is the health benefits plan for federal employees, retirees and their dependents created under 5 U.S.C. §§ 8901-8914.   FEHBA contains an express preemption provision related to payment and with respect to benefits under said plans.  5 U.S.C § 8902(m)(1).

14.     Some of the subject claims asserted involve insurance plans under the Medicare Advantage program and other Medicare plans which are also expressly preempted by 42 CFR §422.402.

15.     The amount in controversy exceeds this Court's minimum jurisdictional amount.

16.     This Court has concurrent jurisdiction over the federal claims asserted herein.

17.     Venue is appropriately established in this Court under A.R.S. § 12-401 because Defendant conducts a substantial amount of business in the State of Arizona, including marketing, advertising and selling insurance products, and administering health plans inside Maricopa County, Arizona.

18.     Pursuant to Ariz. R. Civ. P. 8(b)(2) and 26.2, this is a Tier 3 case.  Plaintiffs respectfully reserve the right to request a different Tier if circumstances arise that would warrant the same.

## **FACTUAL BACKGROUND**
### **(FHMC/BCBSAZ Relationship)**

19.     FHMC operates a 24-hour emergency room and medical clinic in Fountain Hills, Arizona which is a small town of approximately 24,000 people.  FHMC lies on the edge of the Salt River Pima-Maricopa Indian Community.  The nearest emergency room is 11 miles (25-30 minutes' drive during traffic) west of FHMC within 20 miles in all other directions.

20.     FHMC is required by federal law to provide emergency services whether or not a patient has insurance and regardless of whether any insurance plan available is in or out-of-network.

21.     Patients are protected under federal law when seeking care in the emergency room under the Emergency Medical Treatment and Labor Act.  The patient must be stabilized and treated regardless of their insurance status or ability to pay.

22.     FHMC is an out-of-network, non-participating provider with regards to BCBSAZ-administered plans, meaning that Plaintiffs do not have a specific contract with BCBSAZ containing the terms and conditions for services provided to BCBSAZ heath policy insureds.

23.     BCBSAZ insureds still have health insurance coverage for services that they chose to obtain from out-of-network health providers such as FHMC including coverage for out-of-network emergency services.

24.     Therefore, FHMC provides medical services to BCBSAZ insured member patients and submits claims for reimbursement to BCBSAZ on behalf of the patients for the services provided.

25.     BCBSAZ administers both HMO plans which are insurance plans which only cover the patient for services with medical providers who work for or contract with BCBSAZ except in cases of emergency, and PPO plans in which BCBSAZ provides a network of participating providers at a lower cost but covers the out-of-network providers at an additional cost.

26.     Claims submitted to BCBSAZ complained of in this action were submitted to their HMO and PPO Plans.

27.     BCBSAZ's HMO Plans state, "If you see a doctor or go to a clinic or emergency room that is not in your plan's network, you will be responsible for paying the full amount of your bill."[1]

28.     BCBSAZ's PPO Plans state, "Keep in mind, you will enjoy full coverage and lower costs by staying within your network. If you choose out-of-network providers, imaging facilities, or other healthcare professionals and they charge more than BCBSAZ's allowed amount, you will have to pay the difference. In some cases, out-of-network providers may ask you to assign benefits to the provider, which would allow BCBSAZ to send the payment to them directly."[2]

## CAUSES OF ACTION

### COUNT 1

#### (Direct Payment to Patients)

29.     In order to facilitate prompt payment, FHMC has its patients to assign their contractual rights to benefits and payments under their health plans to the FHMC which is standard practice in the healthcare industry.

30.     The patient responsibility form states that the patient is to send any insurance checks received by the patient directly to FHMC and the Conditions of Admission and Consent to Medical Treatment form grants "power of attorney to pursue any claims, penalties, and administration a/or legal remedies for collection against and responsible payer, employer-sponsored medical benefits, plans, third party liability carrier, or any other responsible attorney" (hereinafter collectively referred to as the "Assignment"). **Exhibit A** is an example of the Assignment which was in force at all material times hereto.  Specific Assignments for the individuals for whom FHMC seeks reimbursement for non or under

---

1 https://www.azblue.com/~/media/azblue/files/resources/membergettingstartedguide-hmo.pdf?la=en
2 https://www.azblue.com/~/media/azblue/files/resources/membergettingstartedguide-ppo.pdf?la=en

payment by BCBSAZ have been compiled as well and will be disclosed under seal during discovery or at the request of the Court.

31.     Upon information and belief, BCBSAZ Plans related to the patient claims presented herein do not contain an anti-assignment provision.

32.     In the alternative, if the subject BCBSAZ Plans contain anti-assignment provision, Plaintiffs assert those provision have been expressly or implicitly waived.

33.     BCBSAZ members at issue in this action agreed to assign their health insurance benefits under their individual insurance policies/plans to FHMC.  This is standard practice for Emergency Departments and is presumed when Emergency Care claims are filed on behalf of the patients.

34.     From April 2021 to September 2022, BCBSAZ honored selected assignment of benefits between FHMC and BCBSAZ members.  BCBSAZ directly reimbursed FHMC for medical services provided to BCBSAZ those members.

35.     From the same time period of April 2021 to September 2022 BCBSAZ also sent checks directly to patients.

36.     Fifty-seven (57) patients who have received these direct payments from BCBSAZ have failed to transfer the payment to it, leaving FHMC uncompensated for substantial sums of money.

37.     When contacted, the BCBSAZ patient members had cashed the checks and did not understand, were confused and frustrated that FHMC was now trying to collect the money and were unable or unwilling to pay for the emergency services FHMC provided.

38.     Checks were sent to patients, or the patient's main policy holder such as a spouse, without explanation why they were receiving the checks.

39.     Direct payment places the recipient in a moral and ethical bind (even if they knew they had to endorse the check over or make payment) where most patients in the Maricopa County live paycheck to paycheck.

40.     There are over $315,000 in unpaid claims for which FHMC has the right to receive payment under the Assignment.

41.     A list of the directly-paid Patients who have not either endorsed their check or submitted payment is attached as **Exhibit B** with the following minimum information, if known to FHMC: (a) patient name redacted and replaced by a doe number from 1 through 71, the key has been furnished to Defendant; (b) date of service; (c) whether Defendant has audited the claim, (d); the Plan number; (e) the Group number; (f) the Claim number where that information has been furnished to FHMC; and (g) the type of Plan billed. Upon information and belief, all of the patients have dates of service, Plan numbers, Group numbers, BCBSAZ Claim numbers, and are or are not ERISA plans, even if that information is not included for a specific patient in **Exhibit B**.

42.     By sending the claims checks directly to patients, BCBSAZ has forced FHMC to spend time, manpower, money, attorney's fees, and costs to collect the amount of money owed for checks sent directly to patients.

43.     Forcing FHMC to collect directly from patients creates an antagonistic relationship between the facility and Patients, damaging that relationship for future services as well as word-of-mouth reputation of FHMC.

44.     Sending the claims reimbursement checks directly to the patient(s) creates a money-making scheme for BCBSAZ members who have figured out that their insurance company will send the checks directly to them and FHMC cannot turn the patient away under both state and federal law which requires FHMC to treat every individual who presents to its emergency room in good faith.

45.     Forcing FHMC to collect directly from patient(s) after services are rendered is a way to punish FHMC for remaining an out-of-network provider, and pressure the small medical center to join the network and accept lower payments.

46.     FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## COUNT 2

### (Unreasonable Denials and Reimbursements Received Well Below Benchmark)

47.     Denials received without supporting explanation why as required by law.

48.     BCBSAZ has historically allowed 47% of billed charges for FHMC's emergency services based on their remittances directly to patients in 2021, and 2022 for visits in 2021 prior to the effective date of the NSA.  Cost benchmarks in the industry confirm the allowed rates for the CPT codes billed are also consistent with this rate.

49.     According to the NSA, reimbursements received for out-of-network providers are to be the median price according to the 2019 benchmark adjusted for inflation.

50.     2022 claims processed by BCBSAZ reflect a marked decrease in rate since 2022 and inception of the NSA compared to similar claims processed for 2021 dates of service that were paid directly to patients.  Those payments were made only 5-7% of the billed services, and not in accordance with the 2019 median benchmark.

51.     A list of the unpaid/underpaid Patient claims is attached as **Exhibit C** with the following information, if known to FHMC: (a) patient name redacted and replaced by a doe number from 1 through 1710, the key of which will be furnished to Defendant; (b) date of service; (c) whether Defendants have audited the claim, (d); the Plan number; (e) the Group number; (f) the Claim number where that information has been furnished to FHMC; and (g) the type of Plan billed. Upon information and belief, all of the patients have dates of service, Plan numbers, Group numbers, BCBSAZ Claim numbers, and are or are not ERISA plans, even if that information is not included for a specific patient in **Exhibit C**.  This list represents those claims that were processed thirty (30) or more days post submission to BCBSAZ.  This is a running list and continues to grow.  Plaintiffs specifically reserve the right to amend and add additional claims as they are developed and identified.

52.     Other claims submitted for the same or substantially identical services were reimbursed at the 2019 median benchmark.

53.     FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## COUNT 3

### (Intentional Delay of Processing)

54.    As a health insurer, BCBSAZ is regulated by the Arizona Department of Insurance and subject to the Arizona Insurance Code and Arizona Insurance Regulations.

55.    As required by law, FHMC provided emergency medical services to patients in need who are BCBSAZ insureds.

56.    FHMC submitted complete/clean claims to BCBSAZ for payment for those emergency services.  A claim is considered clean or complete when the provider submits "a claim that has no defect or impropriety (including any lack of any required substantiating documentation) or particular circumstance requiring special treatment that prevents timely payment from being made on the claim." *See* 42 USC § 1395s-112(b)(4).

57.    Claims are required to be timely processed by BCBSAZ.

58.    BCBSAZ is required to reimburse, contest, or deny each complete claim submitted by FHMC within thirty (30) days of receipt.

59.    Out-of-network claims, if paid, are to be reimbursed according to the median price for the 2019 benchmark adjusted for inflation.

60.    Upon processing the claim, BCBSAZ is required to provide an Explanation of Benefits ("EOB") that explains whether or not FHMC's billed services have been paid or denied and the specific reasons for any denial, and instructions for proceeding with open negotiation and Federal Independent Dispute Resolution ("IDR").

61.    If the claim is underpaid or denied, there is an open 30-day negotiation period to seek further reimbursement.  After the 30-day negotiation period ends, medical providers seeking reimbursement have four days to file for IDR.  The losing party is responsible for payment of the IDR fee.

62.    From January 2022 to June 2022, BCBSAZ delayed processing claims for six to seven months.

63.    It was not until in-house counsel for FHMC wrote a letter to Deanna Salazar, General Counsel for BCBSAZ (see **Exhibit D**) that BCBSAZ began processing claims.

64.     Putatively, claims were processed in large batches, rather than as they were received or in small batches, so underpayments received, and denials were dumped on FHMC at once.

65.     BCBSAZ is required to give reason/basis for underpayment or denial.

66.     Most claims did not provide the required basis or reasoning for underpayment or denial.

67.     Hundreds of cases became eligible for open negotiation all at once.

68.     In addition, FHMC received several claims that were eligible for IDR but not clearly noted on the ERAs or EOBs by BCBSAZ in violation of the NSA.  When FHMC inquired about the eligibility of those claims for IDR, they were informed by BCBSAZ representatives that the grossly underpaid claims were not eligible for open negotiations and IDR.  FHMC has now discovered that those claims were eligible for IDR but have missed the timeline for IDR due to the misinformation provided by BCBSAZ and its agents and therefore missed an opportunity to have the claims reevaluated by the IDR process.  These claims amount to approximately $576,756.36 for which FHMC is entitled to full payment.

69.     In April of 2023, FHMC began receiving notifications that BCBSAZ was sending automatic denial of claims notices to patients even before the claims were processed and showing in the BCBSAZ portal.

70.     This automatic denial misled patients as to the true status of the claim.

71.     After a period of time, BCBSAZ processed the claims; however, the patients had already panicked as a result of the denial.

72.     These patients are unlikely to treat with FHMC in the future believing their claims will be denied using FHMC as their provider.

73.     Pursuant to both state and federal law, BCBSAZ is obligated to pay for the services rendered by FHMC, including, but not limited to:

        A. The Patient Protection and Affordable Care Act of 2010, Pub. L. No. 111-148, 124 Stat. 119 (2010);

B. The No Surprises Act of the 2021 Consolidated Appropriations Act, Pub. L. No. 116-260, 134 Stat. 1182, Division BB, §109;

C. Arizona Revised Statutes Title 20. Insurance § 20-3102; and

D. The state and federal regulations implementing those laws.

74. FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## **COUNT 4**

### **(Violation of the Affordable Care Act)**

75. Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

76. The Patient Protection and Affordable Care Act ("ACA") added Section 2719A to the Public Health Services Act ("PHS Act"), 42 U.S.C. § 300gg-19a. Section 2719A requires any group health plan or insurer who provides emergency services benefits to cover those services regardless of in or out-of-network status, without the need for prior authorization, and the patient's cost-sharing requirement (copayment) is the same.

77. BCBSAZ is required to pay out-of-network emergent claims at minimum the greatest of three specified amounts in Section 2719A. 29 C.F.R. § 2590.715-2719A(b)(3)(i)(A)-(C):

1. The amount negotiated with in-network providers for the emergency service, accounting for in-network co-payment and co-insurance obligations;

2. The amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services (such as usual, customary, and reasonable charges), but substituting in-network cost-sharing provisions for out-of-network cost-sharing provisions; or

3. The amount that would be paid under Medicare for the emergency service, accounting for in-network copayment and co-insurance obligations.

78. As detailed above, BCBSAZ has left claim unpaid.  BCBSAZ currently owes FHMC $14,396,340.00 in unpaid claims.

79.     Those claims paid have been paid at 5-7% of the charged amount which is well below the greatest of the three specified amounts.   BCBSAZ currently owes FHMC $550,638.10 in underpaid claims not including statutorily allowed interest.

80.     FHMC as the legal assignee of these claims is entitled to restitution for unpaid and underpaid claims.

81.     Under Code Section 4980D, an excise tax for a group health plan's failure to comply with ACA reforms can be triggered for $100 per day per individual for whom the failure affects.

82.     FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

**<u>COUNT 5</u>**

**(Violation of the No Surprises Act)**

83.     Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

84.     The "No Surprises Act" is part of the federal Consolidated Appropriations Act ("CAA") signed into law in 2020.  42 U.S.C. § 300gg-111(a)(1). The NSA includes patient billing protections effective January 1, 2022 to present.

85.     The NSA is designed to protect consumers from surprise medical bills when they receive care from out-of-network providers as a result of circumstances that are outside of their control.

86.     The law guarantees the patients' costs are limited to in-network costs and bans sending patients balance bills for any amounts beyond the cost sharing (co-pay, deductible, out-of-pocket minimums).

87.     For plan and policy years starting on and after January 1, 2022 (and on 2022 renewal dates for existing clients), BCBSAZ is mandated to follow the requirements of the NSA in reimbursing out-of-network providers in-scopes services which include emergency care, post-stabilization care, and some types of non-emergency care.

88.     For in-scope claims, BCBSAZ is required to calculate member cost share using the in-network level of benefits and based on the QPA, which is determined according to a formula specified in federal rules:  the median of contracted rates for a given service in the same geographic region within the same insurance market (i.e., nongroup, fully-insured large group, fully-insured small group, or self-insured group) across all of an issuer's health plans as of January 31, 2019, inflated forward in perpetuity by the CPI-U (Consumer Price Index for All Urban Consumers).

89.     In most cases, the initial payment to the out-of-network provider is based on the QPA, less the member cost-share amount.  "Initial payment" does not mean a first installment but rather the amount that the plan or insurer intends to be full payment based upon the relevant facts and circumstances, and as required under the terms of the plan or coverage, prior to the beginning of open negotiations or start of the IDR process.[3]  If the insurer "downcodes" a claim, it must provide an explanation of why the claim was downcoded, including a description of which service codes were altered, and a description of which modifiers were altered, added, or removed, and the amount that would have been the QPA had the service code or modifier not been downcoded.

90.     Within thirty (30) calendar days after an out-of-network provider submits a bill for a qualified item(s) or service(s), plans and issuers must make an initial payment or send a notice of denial of payment. The 30-calendar-day period begins on the date the plan or issuer receives the information necessary to decide a claim for payment for the item or service,

91.     Any notice of denial of payment must be in writing, state that payment for the item or service will not be made by the plan or issuer and explain the reason for the denial of payment.

---

3 https://www.federalregister.gov/d/2021-14379/p-275

92.   Plans and issuers must provide the following information regarding the QPA to out-of-network provider where the recognized amount with respect to an item or service furnished by the provider or facility is the QPA:

1) QPA for each item or service;

2) A statement certifying that the plan or issuer has determined that the QPA applies for the purposes of the recognized amount (or, in the case of air ambulance services, for calculating the participant's, beneficiary's, or enrollee's cost sharing), and each QPA was determined in compliance with the methodology established in Requirements Related to Surprise Billing; Par I (86 FR 36872);

3) A statement that if the provider or facility, as applicable, wishes to initiate a 30-day open negotiation period for purposes of determining the amount of total payment, the provider or facility may contact the appropriate person or office of the plan or issuer to initiate open negotiation, and that if the 30-day negotiation period does not result in a determination, generally, the provider or facility may initiate the Federal IDR process within 4 days after the end of the open negotiation period; and

4) Contact information, including a telephone number and email address, for the appropriate person or office of the plan or issuer to initiate open negotiations for purposes of determining an amount of total payment (including cost sharing) for the item or service. 26 CFR 54.9816-6T(d), 29 CFR 2590.716-6(d), and 45 CFR 149.140(d).

93.   Upon request of the provider or facility, the plan or issuer must provide, in a timely manner:

1)  Whether the QPA for items and services involved included contracted rates that were not on a fee-for-service basis for those specific items and services and whether the QPA for those items and services was determined using underlying fee schedule rates or a derived amount.

2)  If a related service code was used to determine the QPA for a new service code, information to identify the related service code.

3) If the plan or issuer used an eligible database to determine the QPA, information to identify which database was used.

4) If applicable, a statement that the plan's or issuer's contracted rates include risk-sharing, bonus, or other incentive-based or retrospective payments or payment adjustments for covered items and services that were excluded for purposes of calculating the QPA.

94. If there is a disagreement out-of-network provider's denial or amount paid, either party can initial a mandatory thirty (30) business day open negotiation period to attempt to reach an agreement regarding the total out-of-network rate including any cost sharing by filing and serving the appropriate notices.

95. Within 4 business days after the close of the open negotiation period, either party can initiate the IDR process by submitting a Notice of IDR Initiation to the other party and to the Departments along with the necessary information from both parties to decide the issues at hand.

96. BCBSAZ processes claims in compliance with the NSA. According to the NSA, the recognized amount in Arizona is the lesser of the qualifying payment amount (QPA) or billed charges and is determined according to a specific formula. BCBSAZ bases member cost share on the "lesser of" amount.

97. BCBSAZ will typically use the lesser of the QPA or billed charges as the allowed amount for each claim line. BCBSAZ will generally base its initial payment on the "lesser of" amount, minus member cost share.

98. The provider has the right, within 30 business days from the date of claim payment or denial, to ask for open negotiation about the initial payment amount, using one of the negotiation request forms.

99. The NSA establishes the IDR process that providers, emergency facilities, and providers of air ambulance services and group health plans and health insurance issuers in the group and individual market may use following the end of an unsuccessful open negotiation period to determine the out-of-network rate for certain covered services.

100.    Those claims submitted to the IDR which have been found in favor of FHMC, the settlement amount was between 50% and 97% of the billed amount.

101.    As a result of BCBSAZ's reduced reimbursement submissions, it would be illegal for FHMC to send a bill to the patient for the balance under the NSA.

102.    FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

### COUNT 6

### (Breach of Contract)

103.    Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

104.    Upon information and belief, all of the patient(s) insurance plans required payment of emergency medical expenses incurred by BCBSAZ's insureds at the usual or customary rates.  Under the terms of the Plans, patient insureds are entitled to coverage for services they receive from FHMC.

105.    At all times material hereto, FHMC was obligated under both federal and Arizona state law to provide emergency services to all patients regardless of insurance status presenting to the emergency departments they staff including BCBSAZ's insured patients.

106.    BCBSAZ knew and continues to know that FHMC is an out-of-network emergency medicine facility that provides emergency services to patients.

107.    Defendants were and continue to be aware that FHMC is entitled to and expects to be paid in accordance with the standards established under federal and Arizona state law.

108.    Clean claims were provided to BCBSAZ by FHMC which have been denied and/or paid in amount less than the legally required rate.

109.    By virtue of the Assignment, FHMC was assigned the right to receive payment under the insurance plans for services rendered directly from BCBSAZ.  Pursuant to the Assignment, BCBSAZ is contractually obligated to pay FHMC for these services.

110.    BCBSAZ was on multiple occasions informed through its member claims representatives about the existence of these assignments of benefits, which are commonplace

in the industry, but ignored the information, and in many cases, refused to discuss these claims in 2021 that were processed with payments sent to the patients.

111.    BCBSAZ has failed and/or refused to make full payment for reasonable services rendered by FHMC in the manner and amounts required under the terms of each insured's Plans.

112.    BCBSAZ has failed to comply with the terms of its insureds' Plans.  Since FHMC is an assignee, it is entitled to reimbursement for suffered damages and lost benefits including, but not limited to, unpaid benefits, restitution, interest, and other contractual damages in an amount to be determined at trial.

113.    FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## **COUNT 7**

### **(Breach of Duty of Good Faith & Fair Dealing)**

114.    Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

115.    As set forth more specifically above, the insureds' Plan are valid and enforceable contracts which by nature contain an implied duty of good faith and fair dealing.

116.    BCBSAZ as the payors under the Plans owed its insureds a duty of good faith and fair dealing with respect to the Plans.

117.    BCBSAZ insureds received medical services at FHMC and executed Assignments, among other documents, in which they assigned to FHMC their right to benefits under the Plans for the services that FHMC provided to them.

118.    By virtue of these Assignments, BCBSAZ also owed this duty of good faith and fair dealing to FHMC.

119.    Non-payment and paying substantially low rates that did not reasonably compensate FHMC the usual and customary rate or alternatively the reasonable value of the services provided, BCBSAZ performed in a manner that was unfaithful to the purpose of the contract, actual or implied, or deliberately contravened the intention and spirit of the contract.

120.   BCBSAZ breached its duty of good faith and fair dealing owed to FHMC as assignees of rights and benefits under the Plans in numerous ways as set forth more fully above.

121.   BCBSAZ should be required to make restitution to FHMC for its breach of good faith and fair dealing.

122.   FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## **COUNT 8**

### **(Promissory Estoppel)**

123.   Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

124.   BCBSAZ represented that medical treatment sought by its Patient insureds was covered under the Plans, and that the fees associated with that treatment were covered charges under the Plans. Based upon BCBSAZ's representations that the Patients seeking medical care and treatment had active coverage and benefits, FHMC reasonably understood that some payment would be forthcoming for the medical services provided.

125.   FHMC provided medical services to BCBSAZ's insureds in reliance of BCBSAZ's representations regarding coverage and benefits.

126.   FHMC detrimentally relied upon BCBSAZ's representations, authorizations and promises.

127.   FHMC's reliance for foreseeable given BCBSAZ's representations made through communications with FHMC's billing agents to verify, confirm and pre-authorize coverage prior to certain medical services being provided, and there was no ability for FHMC to learn separate and apart from BCBSAZ's representations that BCBSAZ considered FHMC's fees were related and covered under the relevant Plans.

128.   BCBSAZ is now estopped from denying full and complete payment for claims at issue in this Complaint.

129.   FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## COUNT 8

**(Violation of A.R.S. § 20-3102 - Failure to Timely and Completely Pay Claims)**

130.   Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

131.   Claims submitted by FHMC to BCBSAZ which remain unpaid and underpaid where "clean claims" as defined by ARS § 20-3101(2).  Those claims which were not clean claims have been supplemented with the required information to adjudicate the claim submitted.

132.   By refusing to pay and underpaying FHMC's services rendered to BCBSAZ's insured Patients, Defendant has violated, and continues to violate, their statutory obligation to reimburse Plaintiffs in reasonable amounts under ARS § 20-3102.

133.   Defendant has also failed, and continues to fail, to consider and weigh each of the relevant factors in determining reasonable reimbursement appropriately, as demonstrated by its arbitrary and unreasonable payments, on other CPT Codes billed.

134.   BCBSAZ has delayed, and continues to delay, payment of clean claims.

135.   FHMC seeks penalties to if for late paid, partially paid, and unpaid claims under the Arizona Prompt Pay laws.

136.   FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## COUNT 9

**(Violation of A.R.S. § 20-462 – Timely Payment of Claims – Interest Owed)**

137.   Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

138.   The Arizona Insurance Code requires first party insurers to pay a legitimate, documented claim within thirty (30) days of receipt or pay the legal interest rate from the

date the claim is received by the insurer pursuant to A.R.S. § 44-1201, which is 10% per annum.

139.    As described above in more detail and in the attachments to this Complaint and other filings with this Complaint, BCBSAZ and failed and refused to timely pay claims in the amounts set forth.

140.    FHMC is entitled to interest for unpaid and underpaid claims from the 31st day of receipt of the claim to present.

141.    FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

### COUNT 10

### (Quantum Meruit)

142.    Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

143.    Under Arizona law an action for *quantum meruit* requires: (1) the other party was unjustly enriched at the expense of the claimant, (2) the claimant rendered services that benefitted the other party, and (3) the claimant conferred this benefit under circumstances that would render inequitable the other party's retention of the benefit without payment.

144.    To comply with ethical and legal obligations under federal and Arizona law, from April 5, 2021 to present, and continuing, FHMC provided emergency and other medical services to BCBSAZ's insureds, thereby conferring valuable services on Defendant and their insureds.

145.    BCBSAZ could not lawfully prevent its insureds from seeking out-of-network medical care from FHMC; therefore, the parties were in essence compelled to do business with each other.

146.    BCBSAZ as an insurer understood and expected they would be obliged to pay for services rendered by FHMC regardless of whether FHMC was an out-of-network or in-network provider.

147.    There was no expectation by BCBSAZ that FHMC would provide its medical services for free.

148.    An equitable obligation for payment arose to account for the value of services FHMC provided to BCBSAZ insureds.

149.    FHMC expected reasonable and timely payment, but BCBSAZ did not pay for services provided and/or pay the reasonable or median value of such services.

150.    BCBSAZ should be required to make restitution to FHMC even though it was not a party to the contract for services between Plaintiff and its Patients under the theory of *quantum meruit* which should include, but not be limited to, the value of services provided.

151.    FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## COUNT 11

### (Unjust Enrichment)

152.    Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

153.    In the alternative to, or in addition to, *quantum meruit*, FHMC is entitled, but not limited to, the value of the amount of services inequitably retained by BCBSAZ.

154.    Like *quantum meruit*, unjust enrichment requires a showing of: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.

155.    FHMC rendered valuable emergency services to BCBSAZ's insured patients.

156.    As insurers or plan administrators, BCBSAZ was reasonably notified that emergency services providers such as FHMC would expect to be paid by BCBSAZ for the emergency services provided to their insured patients.

157.    BCBSAZ accepted and retained the benefits of the emergency services provided by FHMC at the request of their insured patients knowing that FHMC expected to be paid a usual and customary fee based on locality, or alternatively for the reasonable value

of services provided for the medically necessary, covered emergency services performed by FHMC for its insured patients.

158.   BCBSAZ received the benefit of having their healthcare obligations to their plan insureds discharged and their insureds received the benefits of the emergency services provided by FHMC.

159.   Given the circumstances enumerated above, it is unjust and inequitable for BCBSAZ to retain the benefits provided by FHMC without paying the value of the benefits.

160.   FHMC seeks compensatory damages for past acts and omissions of BCBSAZ along with future which continue to accrue through the date of trial.

161.   FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## COUNT 12

### (Violation of A.R.S. § 20-461 - Unfair Claim Settlement Practices Act)

162.   Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

163.   BCBSAZ's acts and/or omissions incorporated by reference above have violated the Unfair Claim Settlement Practices under A.R.S. § 20-461 in at minimum the following:

      a.   Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue to both the insured patient(s) and FHMC;

      b.   Failing to acknowledge and act reasonably and promptly upon communications with respect to claims arising under a patient's insurance policy;

      c.   Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under a patient's insurance policy;

      d.   Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e.  Failing to affirm or deny coverage of claims within a reasonable time after proof of claims have been completed and transmitted;

f.  Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which payment due has become reasonably clear;

g.  Compelling assignees of insureds to institute litigation to recover amounts due under an insurance policy by sending checks directly to insured patients, denying claims, and offering substantially less than the amounts ultimately recovered in claims brought by the insureds;

h.  Attempting to settle claims for less than the amount to which a reasonable emergency services provider would have believed they were entitled by reference to written or printed materials accompanying or made part of a valid claims submission;

i.  Making claims payments to insureds or beneficiaries or denying payments not accompanied by a statement setting forth the coverage under which the payments are being made or denied;

j.  Automatically denying claims payments prior to proper processing;

k.  Failing to promptly provide a reasonable explanation of the basis in the insurance policy relative to the facts or applicable law for denial of a claim or for the lower amount of payment of the claim;

164.  BCBSAZ should be required to make restitution to FHMC under the violation of the Unfair Claim Settlement Practices Act for unpaid claims and other costs associated with collection of those claim amounts due as prayed for below.

165.  FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## COUNT 13

### (Bad Faith)

166.  Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

167.   BCBSAZ acted unreasonably and/or not in good faith, and continues to do so, in resolving unpaid and underpaid claims submitted by FHMC.

168.   By paying FHMC at 5-7% of the billed amount, BCBSAZ intentionally attempts to diminish payout, therefore saving the company money.

169.   BCBSAZ has intentionally failed to process or delayed processing of claims without a valid reason as required by state and federal laws, or unreasonably denied claims without a good faith attempt to resolve the pending claim(s).

170.   No meritorious, substantive, or procedural basis to avoid or under pay claims has been presented by BCBSAZ.

171.   FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## COUNT 14

### (Misrepresentations and False Disclosures (A.R.S. § 20-443)

172.   Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

P173.   BCBSAZ, by tendering checks directly to patients, misrepresented the terms of their health insurance policy.

174.   Defendant made false and misleading statements as to the benefits available under Defendant's insurance policies to induce Plaintiffs and class members to accept settlement payments based on false labor costs.

175.   FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## COUNT 15

### (Violation of ARS § 44-1521, *et seq.* – The Arizona Consumer Fraud Act)

176.   Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

177.   In connection with the advertisement and sale of health insurance products, Defendant engaged in the act, use or employment of deception, deceptive or unfair acts or

practices, fraud, false pretenses, false promises, misrepresentations or the concealment, suppression, or omission of material facts with the intent that consumers rely upon such concealment, suppression, or omission, including but not limited to the following:

178.   BCBSAZ's HMO Plans state, "If you see a doctor or go to a clinic or hospital that is not in your plan's network, you will be responsible for paying the full amount of your bill."[4]

179.   BCBSAZ's PPO Plans state, "Keep in mind, you will enjoy full coverage and lower costs by staying within your network. If you choose out-of-network providers, imaging facilities, or other healthcare professionals and they charge more than BCBSAZ's allowed amount, you will have to pay the difference. In some cases, out-of-network providers may ask you to assign benefits to the provider, which would allow BCBSAZ to send the payment to them directly."[5]

180.   In connection with the advertisement and sale of insurance services, Defendant engaged in the act, use or employment of deception, deceptive or unfair acts or practices, fraud, false pretenses, false promises, misrepresentations or the concealment, suppression, or omission of material facts with the intent that consumers rely upon such concealment, suppression, or omission, including but not limited to the following:

181.   Defendant made false, deceptive, misleading, and unfair representations to patients regarding coverage, payment of claims and honoring of assignments.

182.   Defendant engaged in deceptive and unfair acts and practices by failing to disclose that bills submitted by FHMC were denied, underpaid or that the checks for reimbursement were sent to the patient without explanation making them responsible for the entire bill.

---

4       https://www.azblue.com/~/media/azblue/files/resources/membergettingstartedguide-hmo.pdf?la=en
5       https://www.azblue.com/~/media/azblue/files/resources/membergettingstartedguide-ppo.pdf?la=en

183.   Defendant engaged in deceptive and unfair acts and practices by failing to inform patients checks sent to them were payment of medical bills and due and owing to FHMC under the assignment.

184.   Defendant concealed, suppressed, or omitted material facts with the intent that others rely on such concealment, suppression, or omission by failing to disclose to its insured patients that assignments those chose to extend would not be honored.

185.   Defendant engaged in deceptive and unfair acts and practices by failing to pay FHMC at the usual and customary rate for the locality under federal and Arizona state laws.

186.   Defendant engaged in deceptive and unfair acts and practices by correcting its failure to pay and for underpayment of claims.

187.   Defendant engaged in deceptive and unfair acts and practices by failing to include the necessary documentation explaining why claims were not paid, underpaid, and/or downcoded.

188.   Defendant engaged in deceptive and unfair acts and practices by misinforming FHMC that certain claims were not eligible for the IDR process when they actually were.

189.   As an independent licensee of the Blue Cross Blue Shield Association, BCBSAZ follows the policies and procedures as dictated and implemented by the Blue Cross Blue Shield Association.

190.   At one-point, Blue Cross Blue Shield through its Oklahoma licensee made it known that "payments for services rendered by providers who do not contract with [Blue Cross] are sent directly to our customers. Thus, out-of-network providers face the inconvenience of attempting to collect payment from the customer and the accompanying possibility of incurring bad debts."6

191.   This behavior constitutes a deliberate and intentional methodology of cutting out-of-network providers out of the payment loop and sending the money to unsophisticated

---

6 Blue Perspective: BCBSOK Position on Legislation and Regulatory Issues, Blue Cross Blue Shield Oklahoma, www.bcbsok.com/grassroots/pdf/blueperspective_aob27-103003.pdf (October 27, 2020).

and uninformed insured patients who believe their bills have been covered under their health insurance policies.

192.    While engaging in the acts and practices alleged in this Complaint, BCBSAZ was at all times acting willfully as provided by A.R.S. § 44-1531.

193.    As a result of BCBSAZ's willful and knowing engagement in deceptive trade practices, FHMC is entitled to recover treble damages and all profits derived from the knowing and willful violation.

<u>**COUNT 16**</u>

**(Interference With Prospective Economic Advantage)**

194.    Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

195.    When FHMC treats a Patient a valid contractual relationship is established and there is a business expectancy, both present and future.

196.    Forcing FHMC to collect money directly from the patients when they believed the services were covered by their health insurance ends up alienating the patients and thereby discouraging future visits by both the patients and prospective Patients who hear through word-of-mouth.

197.    BCBSAZ's wrongful actions incorporated by reference above cause FHMC to lose business and impact the Patient(s) ability to access emergency services close to home.

198.    BCBSAZ should be required to make restitution to FHMC even though it was not a party to the contract for services between Plaintiff and its Patients under the theory of interference with prospective economic advantage for unpaid claims and other costs associated with collection of those claim amounts due as prayed for below.

199.    FHMC has been damaged as the result of BCBSAZ's actions and/or omissions in an amount to be proven at trial.

## COUNT 17

### (Declaratory Judgment)

200.    Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

201.    The patients for whom their claims remain unpaid or underpaid have assigned their rights to actions of recovery to FHMC by way of an Assignment.  Therefore, FHMC stands in their shoes and has the right to recovery.

202.    There is a substantial controversy and active dispute between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  The dispute, therefore, between Plaintiffs and Defendant is a justiciable controversy appropriate for declaratory judgment under the Declaratory Judgment Act, A.R.S. § 12-1832 and any such judgment or decree will terminate any uncertainty and controversy giving rise to this proceeding.

203.    Defendants have denied Plaintiffs' right to payment under their Plans and Policies terms creating a justiciable controversy.

204.    Accordingly, Plaintiffs are entitled to a declaration establishing the usual and customary rates that they are entitled to receive for claims, as well as a declaration that BCBSAZ is required to pay FHMC at a usual and customary rate submitted thereafter.

## COUNT 18

### (Injunctive Relief)

205.    Plaintiffs incorporate by reference every allegation previously set forth as though fully set forth in this cause of action.

206.    Plaintiffs have suffered irreparable damages and injury to their reputations in the community.  No amount of damages awarded will repair that damage or bring back patients whom FHMC has pursued for collections of unpaid medical bills resulting from BCBSAZ's acts and omissions cited herein.  A permanent injunction requiring BCBSAZ to timely and accurately process claims upon receipt should be implemented.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

A.    Judgment in favor of FHMC and against add Defendants on Plaintiffs' Complaint;

B.    An award of actual, consequential, general, and special damages in an amount which will be proven at trial;

C.    A declaratory judgment that BCBSAZ's failure to pay FHMC the usual and customary claims amount for its locality or alternative the reasonable value of their services violates Arizona law, breaches the parties' contact, either actual or implied, is a tortious breach of the implied covenant of good faith and fair dealing, and violates Arizona common law;

D.    An order permanently enjoining BCBSAZ from paying claims' rates which are not representative of the usual and customary rate for this locality or alternatively that do not compensate FHMC for reasonable value of services rendered to BCBSAZ insured patients; and enjoining BCBSAS from engaging in acts or omissions that are violative of federal and Arizona state law;

E.    Judgment against Defendants in favor of FHMC for treble damages relating to Defendant's violation of the Arizona Consumer Fraud Act;

F.    Judgment in favor of FHMC against Defendants of interest at the rate of 10% interest per annum on all unpaid and underpaid claims, each and individually, starting from the 31st day of receipt through the date of trial;

G.    An Order awarding reasonable attorneys' fees and costs, as provided by common law, federal or state statute, or equity, including, but not limited to, A.R.S. §§ 12-341.01(A) and 12-341;

H.    Pre and post judgment interest at the highest rates permitted by law; and

I.    Such other relief the Court deems just and proper.

## JURY DEMAND

FHMC hereby demands a trial by jury on all issues so triable.

1      **RESPECTFULLY SUBMITTED** this 18th day of May, 2023.

2

3                                      */s/ Grover C. Peters III*

4                                      Grover C. Peters III
                                       *Attorney for Plaintiffs*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28