1

**PAPETTI SAMUELS WEISS MCKIRGAN LLP**
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

**Randy Papetti** (State Bar No. 014586)
Direct Dial: 480.800.3525
Email: rpapetti@PSWMlaw.com

**Lauren A. Crawford** (State Bar No. 027792)
Direct Dial: 480.800.3538
Email: lcrawford@PSWMlaw.com

*Attorneys for Blue Cross and Blue Shield of Arizona, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| FHMC, LLC; and FHMC Clinic, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Blue Cross and Blue Shield of Arizona, Inc.,<br><br>Defendant. | Case No. 23-cv-00876-GMS<br><br>**BCBSAZ'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>(Oral Argument Requested) |

Plaintiffs FHMC, LLC and FHMC Clinic, LLC (collectively, "FHMC") operate an emergency medical services facility that does not accept any insurance plan. By filing this lawsuit, FHMC inappropriately seeks to circumvent the administrative procedures and arbitration process outlined in the No Surprises Act ("NSA"). Specifically, FHMC asks the Court to intervene to address FHMC's complaints about its "reimbursement rate" where no private right of action exists to support such a demand.[1] Under federal law, these claims ***must*** be decided through the designated independent dispute resolution process ("IDR").[2]

---

[1]  Both FHMC, LLC and FHMC Clinic, LLC are Arizona limited liability companies, but only FHMC, LLC is a licensed Arizona outpatient treatment center as alleged. *See* https://hsapps.azdhs.gov/ls/sod/Provider.aspx?ProviderName=FHMC (last visited August 31, 2023). (Dkt. 23, First Amended Complaint ("FAC") ¶ 2.) The Court may take judicial notice of public records filed with government agencies because such filings are not subject to reasonable dispute. *See* FED. R. EVID. 201(b).

[2]  FHMC cannot pursue the relief it seeks through the filing of a judicial complaint other than as set forth in the governing statute. *See* 42 U.S.C. § 300gg-111(b)(5)(E) ("[a] determination of a certified IDR entity . . . shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9").

The FAC takes a kitchen-sink approach at pleading claims by requesting the Court require Blue Cross and Blue Shield of Arizona, Inc. ("BCBSAZ") to pay what FHMC previously billed its patients. FHMC characterizes this case as a "dispute concerning the reimbursement rate" for emergency medical services, asserting both federal and state claims, directly on its own behalf and derivatively on behalf of certain BCBSAZ members. (FAC ¶ 2.) Even if FHMC's FAC was procedurally proper, which it isn't, none of the claims state claims on which relief may be granted. Accordingly, the Court should dismiss the entirety of the FAC under Rule 12(b)(6).

## I.      RELEVANT BACKGROUND.[3]

BCBSAZ is a health insurer that provides fully-insured health insurance plans and acts as a claims administrator to self-funded plans. (FAC ¶ 11.) Neither FHMC entity participates in any provider networks offered by any health insurer or health plan, including BCBSAZ. (*Id.* at ¶ 3.) FHMC alleges it was underpaid or not paid for emergency medical services provided to individuals who are BCBSAZ members. (*Id.* at ¶¶ 6, 55.)[4] Because under federal law FHMC may no longer balance bill its patients for the emergency services it provides, it instead demands payment (of its billed charges) from BCBSAZ. (*Id.* at ¶¶ 1-3.)

Congress enacted the NSA to protect individuals from surprise medical bills from out-of-network ("OON") medical providers and facilities in certain circumstances in which surprise billing is common, like emergency services. A surprise medical bill

---

Section 10(a) of Title 9 provides the grounds for vacating an arbitral award under the Federal Arbitration Act. 9 U.S.C. §§ 1, *et seq.*

[3]  For purposes of this Motion, the FAC's allegations are taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept as true, however, unreasonable inferences or legal conclusions presented as factual allegations. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[4]  During the meet and confer process, counsel for BCBSAZ requested FHMC identify which claims "at issue" were IDR-eligible and claims that were already adjudicated by an IDR entity. (FAC at Exhibit B (2022 claims) and Exhibit C (2023 claims)). The FAC does not contain this detail, nor do exhibits C-1 or C-2.

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

occurs "when a consumer covered by a health plan is unexpectedly treated by an [OON] provider and is required to pay the difference between what the plan pays and the provider's charge," often amounting "to thousands of dollars of unforeseen medical costs." H.R. Rep. No. 116-615, pt. I, at 47 (Dec. 2, 2020). The NSA applies (1) when patients receive emergency care from OON providers; and (2) when patients receive medical care from OON providers of ancillary services but at a facility, such as a hospital, that participates in the provider network of the patients' health plan. *See* 42 U.S.C. §§ 300gg-131, 300gg-132.

The NSA prohibits OON providers from billing health plan members directly for certain items or services. *See* 42 U.S.C. §§ 300gg-131(a) (emergency services); 300gg-132 (non-emergency services). The NSA directs health plans and OON providers to resolve disputes over the price of OON services, first through informal negotiation and then, if necessary, through IDR. *Id.* at §§ 300gg-111(a)(1)(C)(iv)(I) (health plan initial payment), -111(c)(1)(A) (30-day open negotiation period), and -111(c)(1)(B) (IDR initiation if negotiations are unsuccessful in the absence of state specified law). The IDR process works to resolve disputes between healthcare plans and OON providers by providing that federally-contracted entities, acting as arbitrators, receive submitted offers from both the health plan and the OON provider and select one of the two offers. Not later than 30 days after the date of selection of the IDR entity, the entity must notify the parties of its determination. *Id.* at § 300gg-111(c)(5)(A)(ii). IDR awards are binding subject only to limited exceptions, and payment of an IDR award must be made 30 days after the IDR determination. *Id.* at § 111(c)(5)(E)(i), -111(c)(6). Because the NSA provides a direct means through the IDR process for OON providers to seek reimbursement from the health plans, the patients themselves are removed from the middle of reimbursement disputes, exactly as intended.

## II.    LEGAL STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), FHMC must provide more than "labels and conclusions" or a "formulaic recitation of the elements of cause of

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

action." *Iqbal*, 556 U.S. at 678 (2009). Rather, the FAC must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

The Rules require a heightened pleading standard for allegations of fraud. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." A fraud claim "must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *Kenneth v. Nat'l Cas. Ins. Co.*, 2009 WL 10673420, at *2 (D. Ariz. Jan. 30, 2009). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations and citation omitted).

## III.    FHMC IMPROPERLY SEEKS REVIEW OF NSA CLAIMS.

FHMC asserts claims for violation of the Patient Protection Affordable Care Act (the "ACA") and the NSA, but FHMC fails to state claims on which relief may be granted *for reasons FHMC concedes*: neither the ACA nor the NSA include a private-right-of-action, enforcement, or remedies provisions. (*See* FAC ¶ 87 (stating that the ACA "contains no express provisions that would provide remedies to parties who suffer damages as a result of an insurer's violation"); ¶ 112 (acknowledging that "[t]he NSA contains no provisions that would subject violators of the Act's process provisions . . . to penalties, reprimand, review, or any consequences at all for failure to follow the Act").) Despite its acknowledgement of the absence of a delineated private right of action and judicial enforcement provisions under both the ACA and the NSA, FHMC filed this lawsuit, asserting BCBSAZ must pay "underpaid and unpaid" claims.

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

### A.      FHMC's NSA Claim Fails as a Matter of Law.

Congress enacted the NSA in December 2020 with the primary goal of protecting patients from "surprise medical bills." Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758–2890 (2020). The NSA applies to individuals insured under individual and group health insurance plans, employer self-funded plans, non-federal governmental plans (state, county, and city plans), church plans, the Federal Employees Health Benefit plans, and to the uninsured. *See* March 2023, Federal Independent Dispute Resolution (IDR) Process Guidance for Disputing Parties at § 1.3.

Generally, the NSA limits the amount a patient will pay for emergency services furnished by an OON provider. 42 U.S.C. §§ 300gg-111, 300gg-131, 300gg-132. Prior to the NSA, OON providers were free to balance bill patients for the difference in costs between the amount covered by the health plan, and whatever amount the OON provider decided to charge. The NSA requires insurers to reimburse OON providers at a statutorily calculated "out-of-network rate." 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D). In states with an All-Payer Model Agreement or specified state law, the OON rate is the rate provided by the Model Agreement or state law. *Id.* at § (a)(3)(K). In states like Arizona without a Model Agreement or specified state law, the OON rate is either the amount agreed to by the insurer and the OON provider or an amount determined through open negotiation or the IDR process. *Id.*

The NSA does not contain a private right of action permitting FHMC to file a complaint for payment to address its gripes with the IDR process or its perceived issues with BCBSAZ's compliance with the NSA.[5] Such issues must be reported directly to the Departments promulgating the regulations. *See, e.g.*, OMB Control No. 1210-0169 (IDR party's request for extension of deadlines); October 2022, Federal Independent Dispute Resolution (IDR) Process Guidance for Disputing Parties at § 6.1.2 ("If either

---

[5] For purposes of this Motion, FHMC's allegations regarding BCBSAZ's perceived non-compliance with the NSA must be taken as true. BCBSAZ's alleged failures "to follow the processes required by the NSA," however, are indeed, in large part, FHMC's misperception. (FAC ¶ 109.)

party believes that the QPA has not been calculated correctly, the party is encouraged to notify the Departments at FederalIDRQuestions@cms.hhs.gov.").[6] As a result, FHMC's claim that BCBSAZ has violated the NSA fails.

**B.  FHMC's ACA Claim Fails as a Matter of Law.**

FHMC alleges that BCBSAZ failed to pay FHMC—as the legal assignee of its patients—the amount the ACA requires for OON emergent claims. (FAC ¶ 82.) FHMC's claim that BCBSAZ violated the ACA fails because the statute does not impose the requirements FHMC alleges and because the claims for which FHMC seeks monetary damages are within the scope of the NSA's IDR arbitration. (*Id.*)

FHMC contends that BCBSAZ "is required to pay" OON emergency claims "at a minimum of the greatest of three amounts specified in Section 2719A" and cites 29 C.F.R. § 2590.715-2719(A)(b)(3)(i)(A)-(C) in support. (*Id.*) Part 2590 outlines rules and regulations for group health plans, and Section 2719A sets forth patient protections, not what BCBSAZ is "required to pay" an OON emergency services provider. Specifically, Section 2590.715-2719(A)(b)(3)(i)(A)-(C) outlines an insured patient's cost-sharing requirements for OON emergency services.

The minimum payment standards set forth in paragraph (b)(3) of the regulations were developed to protect patients from being financially penalized for obtaining emergency services on an OON basis.[7] The ACA does not provide a private right of action for FHMC to file a complaint for repayment, and therefore FHMC's claim thereunder fails as a matter of law.

_____

[6]  The "Departments" collectively refers to the U.S. Department of Health and Human Services, the U.S. Department of Labor, the U.S. Department of the Treasury, and the Office of Personnel Management.

[7]  *See* ACA Implementation FAQs, Set One, Q15 (Out-Of-Network Services) available at: https://www.cms.gov/CCIIO/Resources/Fact-Sheets-and-FAQs/aca_implementation_faqs#Top (last visited August 31, 2023).

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

**IV.     FHMC'S STATE LAW CLAIMS FAIL.**

FHMC's direct state law claims asserted on its own behalf—counts 5-12 (in part) and 13—ignore that "a determination made by a certified IDR entity is binding upon all parties involved, in the absence of fraud or evidence of intentional misrepresentation of material facts to the certified IDR entity by any party regarding the claim." 86 Fed. Reg. 55980-01, *Requirements Related to Surprise Billing: Part II* (Oct. 7, 2021). A certified IDR entity's determination is not subject to judicial review, except as set forth in 9 U.S.C. § 10(a)(1)-(4).

FHMC's state law derivative claims—counts 3-4 and 12 (in part)—also fail because the assignment of benefits does not grant FHMC any rights to bring a claim on its patient's behalf; the document fails to assign any rights to either FHMC, LLC or FHMC Clinic, LLC. Indeed, the assignment document FHMC relies upon does not name either entity. (*See* FAC at Ex. A.) Even if the document assigned a patient's right to payment to FHMC under his or her respective plan, the assignment does not permit FHMC to bring claims beyond a request for payment. (*Id.*) All state law claims asserted by FHMC based on an assignment of benefits must be dismissed for failure to state a claim on which relief may be granted.

**A.     The Assignment of Benefits Does Not Confer Rights on FHMC.**

"Out-of-network providers' claims against insurers do not arise under state common law, but instead depend upon the will of [C]ongress, and flow from a federal statutory scheme." *Haller v. U.S. Dep't of Health & Human Servs*., 621 F. Supp. 3d 343, 354-55 (E.D.N.Y. 2022) (internal citations omitted) (appeal pending). FHMC seeks to avoid this legal reality by attempting to assert claims on behalf of its patients. That doesn't work here for several reasons.

In exchange for, and in connection with emergency medical services provided by FHMC, FHMC apparently requires patients to execute a document conditioning admission and treatment on the patients executing an assignment of benefits under their respective insurance policies. (FAC ¶¶ 5, 33.) In pertinent part, the assignment provides:

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

> I ASSIGN TO THE Facility or as necessary to any Facility-based physician (for the purposes of this section, collectively the "Facility") all of my rights and benefits under existing policies of insurance providing coverage and payment for any expenses incurred as a result of services and treatment rendered by the Facility or any independent contractor. <u>I authorize direct payment to the Facility or to any independent contractor of any insurance benefits otherwise payable to or on behalf of myself</u>. . . . .

> I irrevocable [sic] appoint the Facility as my authorized representative to pursue any claims, penalties and administrative and/or legal remedies on my behalf <u>for collection against any responsible payer, employer-sponsored medical benefit plans, third party liability carrier, or any other responsible third party</u>. . . . .

(FAC at Exhibit A (the "<u>Assignment</u>")) (emphasis added).

As an initial matter, the Assignment does not define "Facility" as either FHMC, LLC or FHMC Clinic, LLC. (*Id.*) Because the Assignment fails to name either as an assignee of any rights of its patients, neither entity holds a valid assignment of any of its patients' rights. Additionally, wholly absent from this assignment provision is any indication these members intended to assign state-law claims (or anything beyond their insurance benefits) to FHMC. *See Coast Agr. Exp. Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208 (9th Cir. 1975) ("The question of what rights and remedies pass with a given assignment depends upon the intent of the parties.").

In *Physicians Surgery Center of Chandler v. Cigna Healthcare, Inc.*, the patients assigned to the provider the patients' "ERISA rights and plan benefits . . . [and] right[s] to assert and [sic] all causes of action for judicial review to" the provider. 609 F. Supp. 3d 930, 939 (D. Ariz. 2022). The Court held even such language indicated "that patients intended to assign [to the provider] only their rights to bring suit for payment of benefits," and therefore none of the provisions at issue "assign [the provider] the right to bring non-ERISA claims." *Id.* (quoting *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz.*, 770 F.3d 1282, 1292 (9th Cir. 2014)). The Assignments here do not convey ***any*** state-law claims, and FHMC cannot retroactively cure this deficiency. Any state-law claims premised on the Assignments must be dismissed with prejudice. *See*

1  *Physicians Surgery Ctr.*, 609 F. Supp. 3d at 939 ("no amendment can cure this

2  deficiency").

3       The Assignment also claims to provide a power of attorney to the "Facility . . . to

4  pursue any claims, penalties, and administration a/or [sic] legal remedies for collection

5  against and [sic] responsible payer, employer-sponsored medical benefit plans, third

6  party liability carrier, or any other responsible third party[.]" (FAC at Exhibit A.)

7       To be valid under Arizona law, a power of attorney must include, among other

8  things: (1) an affidavit of a witness, which must be notarized; (2) a notarization, stamped

9  with the notary's seal, of the execution of the power of attorney; and (3) the power of

10 attorney must "substantially" follow the template set forth in A.R.S. § 14-5501(D)(4),

11 which includes a certification by the witness in their affidavit that the principal signs and

12 executes the power of attorney willingly, under no constraint or undue influence, and

13 while of sound mind. A.R.S. § 14-5501(D). The power of attorney paragraph included in

14 the Assignment does not comply with any of these requirements. (FAC at Ex. A.) It is

15 therefore invalid. *See Soza v. El Jardin Florists, Inc.*, 2009 WL 4981538, at *11-13

16 (Ariz. Ct. App. Dec. 22, 2009) (power of attorney that did not comply with A.R.S. § 14-

17 5501(D) was invalid).

18      Neither FHMC, LLC nor FHMC Clinic, LLC hold a valid assignment or power of

19 attorney for any of the claims at issue.[8]

20      **B.    The FAC Fails to State a Claim for Breach of Contract.**

21      Even if FHMC's Assignment was valid, FHMC's breach of contract claim must

22 be dismissed because the FAC does not identify the terms allegedly breached (i.e., the

23

24 [8] Contrary to FHMC's allegation made on information and belief, many of the plans
   related to the claims in the FAC contain valid and enforceable anti-assignment
25 provisions. (FAC ¶¶ 35-36.) *See Davidowitz v. Delta Dental Plan of California, Inc.*, 946
   F.2d 1476, 1481 (9th Cir. 1991) (holding that anti-assignment provisions in both ERISA
26 and non-ERISA health plans are enforceable and do not violate public policy); *DB
   Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 876 (9th Cir.
27 2017) (provider lacked derivative standing to sue under ERISA because governing
   ERISA plans "contain non-assignment clauses that override any purported assignment").
28

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

services provided and the benefit-plan terms covering those services). To state a claim, a plaintiff must allege the existence of an agreement, a breach thereof, and a right to recover damages. *Reed v. Corizon, LLC*, 2017 WL 4350753, at *2 (Ariz. App. Oct. 2, 2017); *see also Stratton v. Inspiration Consolidated Copper Co.*, 683 P.2d 327, 330 (Ariz. App. 1984) (party must be "a primary party in interest" under the contract relied upon by a third party for recovery).

The FAC does not identify contractual terms that were allegedly breached, or how those claims were breached (e.g., what the services were and how they were covered under the plans). "[C]onclusory allegations are insufficient to state a claim where a plaintiff does not identify the specific [contract] term that was breached." *See Argyros v. Island Storage & Marine LLC, et al.*, 2021 WL 4427061, at *5 (D. Ariz. Sept. 27, 2021); *Oraha v. Metrocities Mortg.*, LLC, 2012 WL13018737, at *3 (D. Ariz. Oct. 2, 2012) ("Because Plaintiff[s] ha[ve] failed to allege any terms of the [contracts] (or any other contract) that were breached, Plaintiff[s] ha[ve] failed to state a claim upon which relief can be granted[.]"). FHMC's breach of contract claim should be dismissed.

### C.   FHMC Fails to State a Claim for Breach of the Implied Covenant.

FHMC does not state a claim for breach of the implied covenant of good faith and fair dealing. This cause of action is the result of an implied covenant arising out of a contract. *See Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1268 (Ariz. 1992). To prevail, a plaintiff must prove that the defendant engaged in action which would impair the benefits which the other had the right to expect from the contract. *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986). FHMC could only have a right to expect a benefit from the at-issue benefit plans if its Assignment properly assigned the claim and if the benefit FHMC asserts were covered by the respective members' plans.

FHMC does not hold a valid assignment, and FHMC has not identified a plan term that assured the benefits it seeks (i.e., the obligation to pay at billed charges for each of the medical services billed by FHMC). Thus, it is not plausible that BCBSAZ's

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

1   actions impeded any rights or benefits that FHMC had under the applicable member

2   benefit plans or the covenants arising therefrom.

3       **D.    FHMC's Promissory Estoppel Claim Fails.**

4       FHMC contends that "BCBSAZ represented that medical treatment sought by its .

5   . . . [members] was covered under the [p]lans, and that the fees associated with that

6   treatment were covered charges under the [p]lans." (FAC ¶ 138.) FHMC's promissory

7   estoppel claim fails for several reasons.

8       A claim for promissory estoppel requires (1) a promise which the promisor should

9   reasonably expect to induce action or forbearance on the part of the promise, (2) action

10  or forbearance induced by the promise, and (3) resulting injustice absent enforcement of

11  the promise. *Johnson Int'l, Inc. v. City of Phoenix*, 967 P.2d 607, 615 (Ariz. Ct. App.

12  1998) (citing § 90 Restatement (2nd) Contracts). The promise must be "sufficiently

13  definite in nature" and "[e]xpressing an intention to do something is not a promise." *In*

14  *re Estate of Shiya*, 2012 WL 4569266, at *6 (Ariz. Ct. App. Oct. 2, 2012).

15      First, a benefit plan affording medical coverage to BCBSAZ's members does not

16  constitute a promise of "some payment" to FHMC for medical services provided. (FAC

17  ¶ 138.) Services must be medically necessary and covered under the terms of the

18  relevant plan before any provider may be reimbursed for providing medical services.

19  Second, to the extent FHMC relied on the respective members' benefit plans for

20  reimbursement of its billed charges when it provided medical services to BCBSAZ

21  members, such reliance was not reasonable. Verification that a patient has insurance with

22  BCBSAZ is not the equivalent of the promise to pay under a health insurance plan.

23  *Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D.

24  Cal. 2000) (stating that "within the medical insurance industry, an insurer's verification

25  is not the same as a promise to pay").

26      Ultimately, FHMC's claim for promissory estoppel is indistinguishable from

27  many similar claims asserted by providers against payors based on verification of

28  benefits and prior authorizations. But, "within the medical insurance industry, an

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

insurer's verification [of benefits] is not the same as a promise to pay." *TML Recovery, LLC v. Humana, Inc.*, 2019 WL 3208807, at*4 (C.D. Cal. Mar. 4, 2019) (dismissing promissory estoppel claim because verifications of benefits are not sufficiently definitive promises); *see also ABC Servs. Grp., Inc. v. Health Net of Cal., Inc*, 2020 WL 2121372, at *6 (C.D. Cal. May 4, 2020) (plaintiff's "allegations about the authorization and verification process are inadequate to support a promissory estoppel claim") *aff'd in part, rev'd in part on other grounds*, 2022 WL 187849 (9th Cir. Jan. 20, 2022); *Malibu Behavioral Health Servs., Inc. v. Magellan Healthcare, Inc.*, 2020 WL 7646974, at *6-7 (C.D. Cal. Dec. 23, 2020) (granting motion to dismiss promissory estoppel claim in absence of any clear and unambiguous promise to pay during authorization process, despite conclusory allegation that payor promised to pay a specific percentage of usual and customary rate).

> **E.     FHMC Fails to State Claims Under A.R.S. § 20-3102 or § 20-462.**

FHMC alleges that BCBSAZ has violated its "statutory obligation to reimburse Plaintiffs in reasonable amounts under A.R.S. § 20-3102" and that BCBSAZ failed "to pay a legitimate, documented claim[s] within thirty (30) days of receipt" and now owes FHMC interest at a rate of "10% per annum." (FAC ¶¶ 146, 152.) Even if FHMC's claims were not subject to the NSA's IDR process, FHMC's claims for payment and interest on allegedly late payments fail because no private right of action exists under this statute. *See Physicians Surgery Ctr.*, 609 F. Supp. 3d at 940 (dismissing an A.R.S. § 20-3102 claim and reasoning that, "[n]o authority indicates that Section 20-3102 provides a private right of action, and [the provider] fails to provide any. [The provider's] argument also fails to persuade the Court that Arizona law would infer a private right of action here.").

Because FHMC's claim for payment under A.R.S. § 20-3102 fails, its claim for interest on such a payment under A.R.S. § 20-462 also fails. Both claims should be dismissed without leave to amend as amendment would be futile. *See Lopez v. Smith*,

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

203 F.3d 1122, 1127 (9th Cir. 2000) (explaining that leave to amend is futile where "the pleading could not possibly be cured by the allegation of other facts").

### F.    FHMC's Claims for Unjust Enrichment and Quantum Meruit Fail.

FHMC contends it conferred "valuable services on [BCBSAZ]" and its members when it rendered emergency medical services to BCBSAZ's members and BCBSAZ is responsible for paying FHMC restitution for "the value of services provided." (FAC ¶¶ 158, 164.) This Court recently rejected a virtually identical unjust enrichment claim.[9]

In *Physicians Surgery Center*, the plaintiff provider alleged that the defendant was enriched by "receiv[ing] the claiming patients' payments for coverage" while the plaintiff was "unjustly impoverished having provided the valuable services without payment[.]" 609 F. Supp. 3d at 939. The Court dismissed the unjust enrichment claim because the plaintiff did not confer the benefit on the defendant. *Id.* ("In this setup, [the plaintiff] is standing in the shoes of the patients in the first step, but then substitutes itself in the third step. By failing to identify what injustice the claiming patients suffered as the result of [the defendant's] actions, this fails to state a claim for relief."). There is no basis to depart from this District's recent precedent here: the unjust enrichment claim should be dismissed with prejudice as amendment would be futile. *See Lopez*, 203 F.3d at 1127 (explaining that leave to amend is futile if "the pleading could not possibly be cured by the allegation of other facts").

Quantum meruit is not a separate cause of action, but is "the measure of damages imposed when a party prevails on the equitable claim of unjust enrichment." *W. Corrs. Grp., Inc. v. Tierney*, 96 P.3d 1070, 1077 (Ariz. Ct. App. 2004). Because FHMC's claim for unjust enrichment fails as a matter of law, so does its "claim" for quantum meruit. *See Physicians Surgery.*, 609 F. Supp. 3d at 940 (dismissing quantum meruit claim

---

[9] To recover on a claim for unjust enrichment, FHMC must plead "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law." *Loiselle v. Cosas Mgmt. Grp., Ltd. Liab. Co.*, 224 Ariz. 207, 210 (App. 2010) (quoting *Mousa v. Saba*, 222 Ariz. 581, 588, ¶ 29 (App. 2009)).

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

because plaintiff provided a benefit—medical treatment—to the plan members, not the defendant and the complaint was "devoid of any facts" to show defendant requested medical services from the plaintiff); *see also Cedars Sinai Med. Ctr.*, 118 F. Supp. 2d at 1013 (granting defendant's motion for summary judgment on quantum meruit where the patient, not the defendant insurance company, requested treatment).

**G.     FHMC Fails to State a Claim for Bad Faith.**

FHMC claims BCBSAZ has acted in bad faith by paying FHMC a percentage of the amount of its billed charges, "intentionally diminish[ing] payout" to FHMC. (FAC ¶ 178.) This argument is flawed for multiple reasons, but one dispositive reason is that BCBSAZ and FHMC have no special relationship that would impose a duty of good faith and fair dealing between these non-contracting parties.

Because FHMC does not allege the existence of a contract between FHMC and BCBSAZ (and none exists), FHMC must allege facts showing the existence of a "special relationship" that gives rise to a legal duty of good faith and fair dealing. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 29 (Ariz. 2002); *McAlister v. Citibank*, 829 P.2d 1253, 1259 (App. 1992) (special relationship). FHMC does not allege any special relationship with BCBSAZ that would give rise to a legal duty of good faith and fair dealing. As a result, FHMC's bad faith claim fails.

**H.     FHMC's Claim Under A.R.S. § 20-443 Fails.**

Section 20-443(A)(1) prohibits "any estimate, illustration, circular, sales material or statement" that "[m]isrepresent[s] the terms of any policy issued or to be issued or the benefits or advantages promised." FHMC claims that BCBSAZ "misrepresented the terms" of members' respective plans because it sent reimbursement checks directly to its members. (FAC ¶ 183.) Direct reimbursement to members does not violate BCBSAZ plans or the language FHMC alleges in support of its claim.

FHMC appears to base the purported "misrepresentation" on its allegations that HMO plans provide that the member is responsible for payment of "the full amount of

[the] bill" and PPO plans "allow" BCBSAZ to send reimbursement directly to a provider.[10] (FAC at ¶¶ 30-31.) Even if the cited language was the same for every BCBSAZ HMO and PPO plan (it's not), sending reimbursement check to members instead of FHMC does not misrepresent the terms of an insurance plan.

Additionally, any claims at issue in FHMC's pleading reimbursed on or before May 18, 2022—one year prior to the filing of FHMC's Complaint—are beyond the Insurance Code's one-year statute of limitations and are accordingly time barred. *See* A.R.S. § 12-541(5) (stating an action for liability created by statute must be commenced within one year after the cause of action accrued); *Sparks*, 647 P.2d at 1139; *Manzanita Park, Inc. v. Ins. Co. of N. Am.*, 857 F.2d 549, 557 (9th Cir. 1988) (stating that a cause of action accrues after an actual injury or damage).

For the foregoing reasons, this claim, too, fails to state a claim on which relief can be granted, cannot be cured by amendment, and must be dismissed.

## I.     FHMC's Consumer Fraud (A.R.S. § 44-1521) Claim Fails, Too.

FHMC alleges that BCBSAZ committed consumer fraud based on BCBSAZ's statements "regarding coverage, payment of claims and honoring assignments[,]" failure to disclose that claims were denied, checks for reimbursement were sent to the patient, and failure to "pay FHMC at the usual and customary rate" for its services. (FAC ¶¶ 191-92, 195-96.) However, the Arizona Consumer Fraud Act ("ACFA") is inapplicable to the facts of this case, FHMC fails to plead its ACFA claim with Rule 9(b) particularity, and to the extent FHMC asserts its ACFA claim derivatively, as detailed above, the Assignment is invalid and does not afford FHMC to assert claims against BCBSAZ for consumer fraud.

The ACFA broadly prohibits fraudulent, deceptive, or misleading conduct in connection with the sale or advertisement of consumer goods and services. A.R.S. § 44-1522(A). The ACFA provides a right of action to persons damaged by a violation of the

---

[10]  Neither web address FHMC provides in its FAC link to the language FHMC quotes.

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

Act. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (Ariz. 1974). To prevail, a plaintiff must establish that (1) the defendant made a misrepresentation in violation of the Act, and (2) defendant's conduct proximately caused plaintiff to suffer damages. *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016).

The ACFA is inapplicable to the facts of this case. The ACFA contemplates an "omission of any material fact . . . in connection with the sale or advertisement of any merchandise[.]" A.R.S. § 44-1522(A). FHMC recites in rote fashion that "[i]n connection with the advertisement and sale of insurance services," BCBSAZ failed to disclose that it denied FHMC's claims, checks were sent to patients, assignments would not be honored, it failed to pay "usual or customary rates" to FHMC, and that BCBSAZ misinformed FHMC of IDR-eligible claims. (FAC ¶¶ 190-98.) These allegations, even if they were true, are unconnected "with the sale or advertisement of [ ] *merchandise*" as is required for a ACFA claim. A.R.S. § 44-1522(A) (emphasis added); A.R.S. § 44-1521(5) (defining "merchandise" as "objects, wares, goods, commodities, intangibles, real estate or services").

Alternatively, even if "insurance services" were "merchandise" under the ACFA, as a third-party to any transaction, FHMC may not sue for "services" provided to others. "The clear intent of [the ACFA] is to protect unwary buyers from unscrupulous sellers." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992). The ACFA "provide injured consumers with a remedy to counteract the disproportionate bargaining power often present in consumer transactions." *Waste Mfg. & Leasing Corp. v. Hambicki*, 900 P.2d 1220, 1224 (Ariz. Ct. App. 1995). The ACFA does not support the notion that a non-consumer may sue based on services provided to third parties.

For these reasons, FHMC's ACFA claim fails as a matter of law.

**J.      FHMC's Claim for Interference with Prospective Economic Advantage also Fails.**

FHMC claims that its treatment of a patient creates a contractual relationship and a future business expectancy between the patient and FHMC, and that BCBSAZ's

"wrongful actions" caused FHMC "to lose business and impact the patients' ability to access emergency services close to home." (FAC ¶ 208.) FHMC's claim fails because it fails to plausibly plead the existence of a business expectancy, that BCBSAZ's conduct was improper, or that it was damaged as a result of BCBSAZ's behavior.

A claim for tortious interference with business expectancy includes: "(1) the existence of a valid contractual relationship or business expectancy, (2) the interferer's knowledge of the relationship or expectancy, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *FLP, LLC v. Wolf*, 2017 WL 4699490, at *2 (D. Ariz. Oct. 19, 2017). The interference must also be improper as to motive or means. *Hill v. Peterson*, 35 P.3d 417, 420 (Ariz. Ct. App. 2001). Tortious interference claims protect only the "reasonable expectations" of parties. *Two Bros. Distrib. Inc. v. Valero Mktg. & Supply Co.*, 270 F. Supp. 3d 1112, 1130 (D. Ariz. 2017), *aff'd,* 769 Fed. Appx. 408 (9th Cir. 2019).

FHMC's Assignment with the patients it treats does not constitute a future business expectancy for emergency medical services. *See Dube v. Likins*, 67 P.3d 93, 99 (Ariz. Ct. App. 2007) (party seeking relief under this theory must allege "facts showing the expectancy constitutes more than a mere 'hope'"). FHMC alleges that sending reimbursement directly to members was wrong because it forced FHMC to collect from its patients (which is consistent with the terms of the Assignment between FHMC and the individuals it treats). BCBSAZ's reimbursement for emergency medical services covered by a member's plans is neither wrongful nor motivated by improper means as is required to state a claim for interference with a prospective business expectancy. FHMC's claim fails and should be dismissed without leave to amend.

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

17

**V.      CONCLUSION.**

For the foregoing reasons, FHMC's FAC should be dismissed in its entirety without leave to amend as such an effort would be futile.

RESPECTFULLY SUBMITTED this 31st day of August, 2023.

PAPETTI SAMUELS WEISS MCKIRGAN LLP

/s/    Lauren A. Crawford
Randy Papetti
Lauren A. Crawford

*Attorneys for Blue Cross and Blue Shield of Arizona, Inc.*

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

1

**CERTIFICATION OF COUNSEL**

2      Pursuant to Local Rule of Civil Procedure 12.1(c) and this Court's Order,

3  undersigned counsel for BCBSAZ certifies that the parties have met and conferred

4  telephonically on multiple occasions in good faith to determine whether an amendment

5  could cure the deficiencies in FHMC's pleading. (Dkt. 23.) The parties have been unable

6  to agree that FHMC's pleading can be cured by permissible amendment.

7

8                                        PAPETTI SAMUELS WEISS MCKIRGAN LLP

9                                        */s/   Lauren A. Crawford*
                                         Randy Papetti
10                                       Lauren A. Crawford

11                                       *Attorneys for Blue Cross and Blue Shield of
                                         Arizona, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

PSWM

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of August, 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Grover C. Peters
Fountain Hills Medical Center
9700 N. Saguaro Blvd.
Fountain Hills, AZ 85268
grover@fhmcaz.com
*Attorney for Plaintiffs*

*/s/ Lauren A. Crawford*