Grover C. Peters - 037380
FOUNTAIN HILLS MEDICAL CENTER
9700 N. Saguaro Blvd
Fountain Hills, Arizona 85268
Telephone: (509) 339-5802
Fax: (509) 315-2229
grover@fhmcaz.com

*Attorney for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| FHMC, LLC, an Arizona limited liability company; and FHMC Clinic, LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Blue Cross and Blue Shield of Arizona, Inc., an Arizona corporation; XYZ entities 1-100 inclusive,<br><br>Defendants. | No. 2:23-cv-00876-GMS<br><br>**PLAINTIFFS' OPPOSITION TO BCBSAZ'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

COMES NOW the Plaintiffs FHMC, LLC and FHMC CLINIC, LLC (collectively "FHMC" or "Plaintiffs") by and through their counsel of record, and hereby respond in opposition to Defendant Blue Cross and Blue Shield of Arizona, Inc.'s ("BCBSAZ") Motion to Dismiss as follows:

**I.      COUNTER STATEMENT OF FACTS**

Congress enacted the No Surprises Act ("NSA" or "the Act") in 2020 set to be effective January 2022 to address "surprise medical bills." Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758–2890 (2020). The Act limits the amount an insured patient will pay for emergency services and certain non-emergency services provided by an out-of-network provider ("OONP"). 42 U.S.C. §§ 300gg-111, 300gg-131, 300gg-132. The OONP is paid an initial qualifying payment amount ("QPA") by the insurer, which for a given health plan and service, is generally "the median of the contracted rates recognized by" the health plan for

in-network providers on January 31, 2019 (before the Act went into effect), adjusted for inflation, minus any patient deductibles or copay obligations. 42 U.S.C. § 300gg-111(a)(3)(E)(i). Insurers are required to process claims within 30 days of receipt. If the provider disputes the amount paid, there is a 30-day open negotiation period to try to resolve the dispute with the insurer on their own. If negotiations fail, the Act establishes a "baseball style" arbitration process ("IDR") between the OONPs and health insurers accessible by submitting certain documents and a $350 fee per party.

FHMC is an out-of-network outpatient treatment center licensed to operate a freestanding emergency room and provide imaging, laboratory, medication and urgent care services.[1] Patients are protected under federal law when seeking care in the emergency room under the Emergency Medical Treatment and Labor Act. The patient must be stabilized and treated regardless of their insurance status or ability to pay FHMC.

FHMC's claims for damages encompass two Claims Periods. The first is March through December 2021 prior to the effective date of the NSA during which BCBSAZ sent emergency room claim payments directly to the patients, and did not pay or underpaid claims paid directly to FHMC.

The second is after the NSA went into effect January 2022 and continuing through the present date. BCBSAZ is not paying or underpaying claims, delaying processing of claims for months well beyond the 30 days permitted by law and overloading FHMC with large batches of denials and underpayments. The NSA prohibits OONPs from billing health plan members directly for certain items or services. E.g., 42 U.S.C. § 300gg-111(c)(2)(A). BCBSAZ is, if they pay, now remitting only approximately 5-7% of the billed charges since January 2022 compared to the average of 47% of billed charges they paid directly to patients in 2021 prior to implementation of the NSA. Any amounts paid are "sham" QPAs forcing FHMC into IDR. IDREs are required to accept the QPA presented by insurers at face value

---

[1] FHMC is not exclusively out OONP for all networks, just BCBSAZ for these purposes who refused to contract with FHMC.

and are not required to determine if the QPA is correctly calculated. Any IDR decisions are final.

The courts have started to recognize that OONPs are being unfairly represented and the NSA has constitutional issues. On August 3, 2023, the U.S. District Court for the Eastern District of Texas issued an opinion and order in *Texas Medical Association v. United States Department of Health and Human Services*, Case No. 6:23-cv-59-JDK (aka *TMA IV*). This opinion and order vacated the batching provisions and the $350 per party administrative fee. Subsequently, on August 24, 2023, the district court issued an opinion and order in *Texas Medical Association, et al. v. United States Department of Health and Human Services*, Case No. 6:22-cv-450-JDK (aka *TMA III*), vacating portions of 86 Fed. Reg. 36,872, 45 C.F.R. § 149.130 and 149.140, 26 C.F.R. § 54.9816-6T and 54.9817-1T, 29 C.F.R. § 2590.716-6 and 2590.717-1, and 5 C.F.R. § 890.114(a) as well as portions of several guidance documents.

As a result of the *TMA III* decision, effective August 25, 2023, the Departments have temporarily suspended all IDR process operations in order to make changes necessary to comply with the court's opinion and order, and the court vacated the current "Payers" QPA calculations due to inclusion of "ghost" or sham QPA rates and unrelated specialty rates in calculation of QPAs which artificially pushes down the QPA rates below true market value.2

Prior to this current suspension, the *TMA IV* decision, the Departments temporarily suspended all IDR process operations to make changes necessary to comply with the court's opinion and order in that case. On August 8, 2023, IDR entities resumed processing batched disputes where the IDR entity determined that the batched dispute was eligible and administrative fees were paid (or the deadline for collecting fees expired) before August 3, 2023. Processing of other batched disputes and dispute initiation remains temporarily suspended. The subsequent *TMA III* decision led to the suspension all of the previously resumed operations. As of September 5, 2023, the Departments have directed certified IDR

---

2 "Departments" used herein refers to the federal administrative agencies charged with the responsibility rulemaking and administration of IDR – the Secretaries of Health and Human Services, Labor, and the Treasury

entities to proceed with eligibility determinations for single and bundled disputes submitted on or before August 3, 2023. All other aspects of IDR process operations remain suspended. Disputing parties are allowed to continue to participate in open negotiations.

## II.     LEGAL ARGUMENT

### A.  12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claim(s). *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must include a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require " 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While courts do not generally require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In addition, "[d]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### B.  Rule 9(b) Standards

The federal rules set a heightened pleading standard for allegations of fraud. Rule 9(b) requires that "In alleging fraud...a party must state with particularity the circumstances

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Further, Rule 9(b) requires that "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations and citation omitted); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Ordinarily, Rule 9(b)'s heightened pleading standard applies only to averments of fraud; "[t]he rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct." *Vess*, 317 F.3d at 1104. But "[i]n some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id*. at 1103-04.

### C.  Private Right of Action and Private Remedy (Generally)

For federal claims which BCBSAZ states Plaintiffs have no private right to action, the Act does not provide OONP private parties the express right to sue insurers who are also private parties for not following the guidelines of the Act that provide OONPs with certain guarantees. Plaintiffs aver FHMC has an implied private right to action.

In determining whether to imply a cause of action, the Court looks to four factors:  (1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create or to deny a private right of action; (3) whether it is consistent with the underlying purposes of the legislative scheme to imply a private right of action; and (4) whether the cause of action is one traditionally relegated to state law." *Nisqually Indian Tribe*, 623 F.3d at 929 (citing *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). "Since announcing this test, the Supreme Court has elevated intent into a supreme factor, and *Cort's* other three factors are used to decipher congressional intent." *Lil' Man in the Boat, Inc. v. City and County of San Francisco*, 5 F.4th 952, 958 (9th Cir. 2021) "[T]he Supreme Court has elevated intent into a supreme factor, we start there and do not feel constrained by the *Cort*

1  framework." *Logan v. U.S. Bank Nat. Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013). Additionally, "[w]hether a federal statute provides a private right of action almost always arises in the context of a claim against a third party, such as a state or private entity…." because the APA provides "an alternative means of ensuring that government officials comply with the dictates of a federal statute." *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1095-1096 (9th Cir. 2005).

Regarding any state claims that BCBSAZ alleges do not contain a private right to action, an implied private right does exist if it is not specifically denied. "[W]e will not interpret a law to deny, preempt, or abrogate common-law damage actions unless the statute's text or history shows an explicit legislative intent to reach so severe a result. It is, after all, easy enough for the legislature to state that a certain statute does or does not create, preempt, or abrogate a private right of action." *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 274, 872 P.2d 668 (1994)

### D.  Plaintiffs' Count 1 - ACA Claim

The Patient Protection and Affordable Care Act ("ACA") does not contain a private right of action specific to OONPs. It does, however, provide an implied private right of action.

To determine the congressional intent whether FHMC has an implied private right, review of 29 C.F.R. § 2590.715- 2719A(b)(3)(i)(A)-(C)'s text for "rights-creating language" is required. See *Alexander v. Sandoval*, 532 U.S. 275, 288-289, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Id.* at 289, 121 S.Ct. 1511 (quoting *California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)). The Supreme Court has rationalized that "[t]he question is not simply who would benefit from [an] Act, but whether Congress intended to confer federal rights upon those beneficiaries." *Sierra Club*, 451 U.S. at 294, 101 S.Ct. 1775.

For insurance coverage plans beginning on or before January 1, 2022, the ACA states any group health plan or insurer who provides emergency services benefits ***must*** cover those

services regardless of in or out-of-network status, without the need for prior authorization, and the patient's cost-sharing requirement (copayment) is the same. FHMC is entitled to be paid for out-of-network emergent claims at minimum the ***greatest*** of three specified amounts in Section 2719A: 1) The amount negotiated with in-network providers for the emergency service, accounting for in-network co-payment and co-insurance obligations; 2) The amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services (such as usual, customary, and reasonable charges), but substituting in-network cost-sharing provisions for out-of-network cost-sharing provisions; or 3) The amount that would be paid under Medicare for the emergency service, accounting for in-network copayment and co-insurance obligations. 29 C.F.R. § 2590.715-2719A(b)(3)(i)(A)-(C).

Plaintiffs contend that the insurer is the focus of the regulation and that the OONPs are conferred certain rights under the ACA. FHMC has right to be paid the greatest amount for claim submitted of the three options. Therefore, FHMC should be entitled to sue BCBSAZ and request any and all remedies available under law.

### E.  Plaintiffs' Count 2 - NSA Claims

To determine the congressional intent whether FHMC has an implied private right, review of 42 U.S.C. § 300gg-111's text for "rights-creating language" is required. See *Alexander v. Sandoval*, 532 U.S. 275, 288-289, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Id.* at 289, 121 S.Ct. 1511 (quoting *California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)). The Supreme Court has rationalized that "[t]he question is not simply who would benefit from [an] Act, but whether Congress intended to confer federal rights upon those beneficiaries." *Sierra Club*, 451 U.S. at 294, 101 S.Ct. 1775.

In summary of the Act, insurers are required to reimburse OONPs at a statutorily calculated "out-of-network rate." 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D). When an OONP submits a bill for services of an insured, insurers must first issue an initial payment

or notice of denial of payment to the OONP within 30 days after submission of a bill for that service. Id. § 300gg-111(a)(1)(C)(iv), (b)(1)(C). The OONP is entitled to the QPA rate of reimbursement which is typically the median rate the insurer would have paid for the service if provided by an in-network provider or facility. Id. § 300gg-111(a)(3)(E)(i). On July 1, 2021, the Departments issued the interim final rule providing OONPs were to be provided with more information regarding the QPA and the IDR process including: (1) the methodology for insurers to calculate the QPA, 45 C.F.R. §§ 149.140(a)(1), (a)(8)(iv), (a)(12), (b)(2)(iv); (2) the information insurers must disclose to providers about their QPA calculations, Id. § 149.140(d)(2); 86 Fed. Reg. at 36,898, 36,933; and (3) an explanation of the insurer's 30-day deadline to provide a payment or denial of payment, Id. § 149.130(b)(4)(i). If the OONP disagrees with the insurer's determination, either denial or too low of amount of reimbursement, then the OONP is entitled to initiate a 30-day period of open negotiation with the insurer regarding the claim. Id. § 300gg-111(c)(1)(A). If the parties cannot resolve the dispute through negotiation, then the OONP is entitled to proceed to IDR arbitration. Id. § 300gg-111(c)(1)(B).

Plaintiffs contend that the insurer is the focus of the regulation and that the OONPs are conferred certain rights under the Act. Therefore, FHMC should be entitled to sue BCBSAZ and request any and all remedies available under law.

Although FHMC would have loved to have reported BCBSAZ to CMS for their violations of the NSA, it is not a requirement of the Act and impractical in this situation. FHMC would have to obtain permission to share the information with CMS for 2,219 different claims (and counting as the violations continue). https://nsa-idr.cms.gov/providercomplaints/s/. FHMC is a small facility and their focus is patient care. Compiling the information for the Exhibits to submit with the FAC was a monumental, painstaking and time-consuming event. (See the Declaration of Chukwuemeka Ezeume In Support of Response ("Decl. of Ezeume")).

**F. Assignment of Claims**

BCBSAZ argues that the Assignment attached Exhibit A to the FAC is invalid and a signed in exchange for medical services. (Def's Motion to Dismiss ("DMTD"), pgs.7-8). Nothing in the Assignment conditions treatment upon signing the documents – that would be a violation of federal law that does not allow the provider to withhold treatment. The documents serve as a notification of rights and responsibilities. Further, BCBSAZ alleges the Assignment is invalid because it does not name either Plaintiff entity specifically as beneficiary and fails to define the word "facility." (Id. at pg. 8). Defendant fails to note that the Assignment's letterhead states "Fountain Hills Medical Center" which is a registered trade name to FHMC, LLC with a registration date of October 14, 2020 (Decl. of Ezeume).

Health care providers, such as the Plaintiffs here, may pursue ERISA claims provided a patient has assigned the provider its benefits claim. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014). However, if an ERISA plan contains an anti-assignment clause, then a patient may not assign a claim. *Id.* at 1296. BCBSAZ has not alleged the existence of any anti-assignment clauses. BCBSAZ's Motion cites the *Physicians* case to invalidate the non-ERISA claims. (DMTD, pg. 8). However, the *Physicians* case involved a Plaintiff who specifically assigned all ERISA only benefits in their assignment with no mention of any other types of assignment. *Physicians Surgery Center of Chandler v. Cigna Healthcare, Inc.*, 609 F. Supp. 3d 930, 939 (D. Ariz. 2022).3 The Fountain Hills Medical Center Assignment states:

> I ASSIGN TO THE Facility or as necessary to any Facility-based physician (for the purposes of this section, collectively the "Facility") all of my rights and benefits under existing policies of insurance providing coverage and payment for any expenses incurred as a result of services and treatment rendered by the Facility or any independent contractor… I irrevocable appoint the Facility as my authorized representative to pursue any claims, penalties and administrative and/or legal

---

3 Interesting to note regarding *Physicians* and other similar case cited by Defendant in the DMTD is that the similar lawsuits brought were by surgical centers or non-emergency room providers who are not bound by Federal EMTALA wherein services cannot be refused.

> remedies on my behalf for collection against any responsible payer, employer-sponsored medical benefit plans, third party liability carrier, or any other responsible third party.

There are no limitations on the type of insurer or circumstances regarding a payor. Therefore, BCBSAZ's argument regarding invalidity of the assignment fails for both ERISA and non-ERISA claims.

Lastly, the Assignment itself is valid despite BCBSAZ's allegations that the Assignment Power of Attorney provisions of A.R.S. § 14-5501(D)(4) are not met. Subsection E states that:

> The execution requirements for the creation of a power of attorney provided in subsection D of this section do not apply if the principal creating the power of attorney is:
> 2. Any person, if the power of attorney to be created is a power coupled with an interest. For the purposes of this paragraph, "power coupled with an interest" means a power that forms a part of a contract and is security for money or for the performance of a valuable act.

Plaintiffs' Assignment is contained within the Conditions of Admission and Consent to Medical Treatment form which is a contract that secures payment for performance of valuable medical services. Therefore, they are not bound by the provisions of (D)(4) of A.R.S. § 14-5501.

### G. Plaintiffs' Count 3 – Breach of Contract

In an action for breach of contract, the plaintiff has the burden to prove the existence of a contract, breach of the contract, and resulting damages. *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, ¶ 30, 83 P.3d 1103, 1111 (App.2004). Generally, BCBSAZ insureds contract with the insurer to provide coverage for medical expenses (minus any copays and deductibles) in accordance with state and federal laws and regulations. That is the essence of medical insurance. FHMC submitted billings for medical services on 2,219 claims belonging to BCBSAZ insureds which remain unpaid or underpaid (FAC Exhibits B-E). In particular,

71 of those claims were for checks which should have been paid to FHMC sent instead directly to the patients. BCBSAZ then threw their insureds under the proverbial bus by directing FHMC to seek repayment directly from their insureds (See Decl. of Ezeume). If there was no Assignment, the FHMC patients would have claims for under and unpayment of valid claims. By way of the valid Assignment, the rights and remedies pass from the patient to FHMC, which in this case would also include breach of contract. FHMC does not have the policies and exact terms of the policies at this fledgling point in the lawsuit. Those will be obtained through discovery.

**H.  Plaintiffs' Count 4 – Breach of Duty of Good Faith & Fair Dealing**

BCBSAZ states that Plaintiffs failed to assert breach of the implied covenant. Plaintiffs fully believe they have legitimate and appropriate Assignment with their patients. Patients have a contract with their insurer which guarantees them certain benefits. As the grantee of the Assignment, Plaintiffs stand in their patients' shoes. "The question of what rights and remedies pass with a given assignment depends upon the intent of the parties." *Pac. Coast Agr. Exp. Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208 (9th Cir. 1975). As "a non-participant health care provider," Plaintiffs may bring suit "derivatively, relying on its patients' assignments of their benefits claims." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz.*, 770 F.3d 1282, 1289 (9th Cir. 2014).

As discussed in the Assignment of Benefits section above, Plaintiffs' patients executed an appropriate Assignment stating they assign: "all of my rights and benefits under existing policies of insurance providing coverage and payment for any expenses incurred as a result of services and treatment rendered by the Facility or any independent contractor." (FAC, Exh. A). Plaintiffs' claim for breach of duty of good faith and fair dealing is entirely sufficient.

**I. Plaintiffs' Count 5 - Promissory Estoppel**

Promissory estoppel provides an equitable remedy that renders a promise enforceable, *Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*, 210 Ariz. 503, ¶¶ 45, 48, 114 P.3d 835, 843, 844 (App.2005), where a promise has been made "which the promissor should reasonably foresee would cause the promisee to rely, [and] upon which the promisee actually relies to his detriment," *Contempo Constr. Co. v. Mountain States Tel. & Tel. Co.*, 153 Ariz. 279, 282, 736 P.2d 13, 16 (App.1987); *see also* Restatement (Second) of Contracts § 90 (1981).

FHMC detrimentally relied upon representations made through communications between BCBSAZ's agents and FHMC's billing agents to verify, confirm and pre-authorize coverage inquiries that the medical treatment sought by their insureds was covered under an active Plan, and that the fees associated with the nature of the treatment were covered charges under the Plans. (FAC 138-142). In some claims, FHMC received no payment at all after confirming coverage (see FAC Exhibits B-E). Further, BCBSAZ promises that "BCBSAZ processes claims in compliance with the NSA."4 BCBSAZ is not processing claims in accordance with the NSA and the QPA and IDR guidelines and timeframes as discussed above and in Plaintiffs' FAC. Therefore, Plaintiffs' promissory estoppel claim is appropriate.

**J. Plaintiffs' Count 6 - A.R.S. § 20-3102 Failure to Timely and Completely Pay Claims**

As discussed above, an implied private right does exist if it is not specifically denied. *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 274, 872 P.2d 668 (1994). The *Physicians* case which BCBSAZ cites again states there is no private right to action to enforce an insurer's compliance with the statute. The court came to this decision claiming a lack of authority at that time to support the idea. *Physicians Surgery Center of Chandler v. Cigna Healthcare, Inc.*, 609 F. Supp. 3d 930, 939 (D. Ariz. 2022). Clearly *Hayes*, supra, finds otherwise. Review of the legislative history of the House Bills associated with this statute, the intent was: 1) To

---

4 https://www.azblue.com/provider/resources/claims-and-remits/no-surprises-act.

make sure health care plans pay interest at the legal rate for late payment on approved claims; 2) Provide tools for the Department of Insurance to track late payments to providers for the purpose of determining whether or not the health care plan may be having financial problems; and 3) Make sure health care plans are required to maintain an internal system for resolving disputes. *See* AZ H.R. B. Summ., 2000 Reg. Sess. H.B. 2600. There is no intent to deny a private right of action to a claimant.5 The development of the statute was in anticipation of the Department of Insurance being overloaded and an attempt to put some responsibility on the insurance companies to try to resolve the issues first. *See* AZ S. Comm. Min., 2/23/2000.

Therefore, Plaintiffs claim should stand as implied private right.

**K.  Plaintiffs' Count 7 - A.R.S. § 20-462 – Timely Payment of Claims – Interest Owed**

Under Arizona law, "pre-judgment interest on a liquidated claim is a matter of right." *AMHS Ins. Co. v. Mut. Ins. Co. of Arizona*, 258 F.3d 1090, 1103 (9th Cir. 2001). A claim is liquidated if "the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion." *Homes & Son Const. Co. v. Bolo Corp.*, 22 Ariz. App. 303, 306, 526 P.2d 1258, 1261 (1974). Pre-judgment interest accrues at 10% per annum under A.R.S. § 44-1201 in the context of a judgment to collect an "indebtedness." *Arizona State Univ. Bd. of Regents v. Arizona State Ret. Sys.*, 242 Ariz. 387, 389, 396 P.3d 623, 625 (Ct. App. 2017).

A.R.S. § 20-462(A) states "any first party claim not paid within thirty days after the receipt of an acceptable proof of loss by the insurer which contains all information necessary for claim adjudication shall be required to pay interest at the legal rate from the date the claim is received by the insurer. The interest shall be calculated on the amount the insurer is legally obligated to pay according to the terms of the insurance contract under which the claim is being submitted." Insurers for medical insurance were not excluded and obviously

---

5 There are 78 entries regarding the legislative history show no intent to abrogate a private right.

medical care was contemplated as a loss because Medicare and Medicare supplemental plans are specifically addressed. A.R.S. § 20-462(C)(1) and (C)(2). Section D states: "This section shall apply only to claims that are to be paid by the insurer directly to the insured, to a beneficiary named in the contract, or to a provider who has been assigned the right to receive benefits under the contract by the insured." A.R.S. § 20-462(D).

Prejudgment interest is immediately due on the 2021 claims that checks were sent directly to the patients instead of the facility and reimbursement payments have not been repaid by the patients. It is not common practice to pay an insured directly unless they have paid out of pocket and are being reimbursed. It is standard practice to pay a medical provider directly for accepted claims. It is also common knowledge and specific knowledge to BCBSAZ that FHMC, like other medical providers, has their patients sign assignment of benefits. (FAC ¶¶ 31 and 124). Prejudgment interest should be due on all claims where it is determined that BCBSAZ did not pay claims in accordance with the appropriate QPA.

### L.  Plaintiffs' Count 8 – Quantum Meruit

To prevail on their *quantum meruit* claim, FHMC is required to prove BCBSAZ paid less than a reasonable amount for their services. FHMC is entitled to the difference between what was paid (or not paid) and what is reasonable under the applicable ACA and NSA payment structures. The doctrine of *quantum meruit* is based on the concept that a person shall not be unjustly enriched by obtaining or retaining money or benefits that properly belong to another. See *City of Sierra Vista v. Cochise Enters., Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (App.1984); Restatement (First) Restitution, § 1 (1937).

FHMC was legally required to provide emergency medical services to BCBSAZ insureds. After submitting appropriate billing statements, BCBSAZ sent checks directly to patients which FHMC was legally entitled to receive. Further, BCBSAZ has consistently paid 5-7% of billed claims when FHMC evaluates the QPA when drafting their billing. FHMC is entitled to reasonable payment amount for their services under this theory and applicable payment structures.

### M.  Plaintiffs' Count 9 - Unjust Enrichment

To state an Arizona claim for unjust enrichment, the plaintiff must prove: (1) the plaintiff conferred a benefit to the defendant; (2) the defendant's benefit is at Plaintiffs' expense; and (3) injustice would result from allowing the defendant to keep the benefit. *USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 354, 732 P.2d 579 (1986).

Plaintiffs provided medical services to BCBSAZ's insureds. By law, Plaintiffs cannot refuse services. These insureds pay insurance premiums for BCBSAZ's benefits of payment for medical services. Plaintiffs were not paid/paid correctly for the reasonable services rendered so basically BCBSAZ double-dips – they get paid but do not have to pay. It would be unjust for BCBSAZ to keep money they should have paid for services rendered, especially since Plaintiffs stand in the shoes of the patient under the Assignment.

### N.  Plaintiffs' Count 10 - Bad Faith

"The tort of bad faith only arises when an insurance company intentionally denies or fails to process or pay a claim without a reasonable basis for such action." *Lasma Corp. v. Monarch Ins. Co. of Ohio*, 764 P.2d 1118, 1122 (Ariz. 1988). "Thus, the tort will not lie for claims which are 'fairly debatable.'" *Id.* (quoting *Noble v. Nat'l Amer. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981)).

As discussed at nauseum, FHMC was entitled to proper payment. BCBSAZ has failed and refused to properly and timely process claims including sending FHMC's payment checks directly to patients and using "sham" QPAs, knowing that FHMC possessed valid Assignments for BCBSAZ's insured patients. When questioned, BCBSAZ refused to discuss its processing of each claim or how it arrived at their decision despite each patient also signing a release of information which included insurers.  (Decl. of Ezeume). BCBSAZ is required by the NSA to provide the basis for denial or underpayment which they have consistently failed to do.  (Id.).  This is the quintessential "gaming" that is considered bad faith.

**O.  Plaintiffs' Count 11 - A.R.S. § 20-443 – Misrepresentation and False Disclosures**

Arizona has long allowed equitable tolling of the statute of limitations when the defendant has fraudulently concealed the basis for the claim. See *Tom Reed Gold Mines Co. v. United E. Mining Co.*, 39 Ariz. 533, 536-37, 8 P.2d 449, 450 (1932). The first check sent directly to a patient was discovered in August of 2021. (Decl. of Ezeume). FHMC contacted BCBSAZ to find out on each of the claims why they had not been paid but BCBSAZ either declined to discuss the case or even let FHMC know how the claim was processed. FHMC had to use the provider portal to determine that the claims were even processed, paid directly to the patient and developed a spreadsheet on February 12, 2022. When they contacted BCBSAZ that the checks had been mailed directly to the patient, FHMC was told they would need to collect directly from the patients. A mass mailing of a form letter was mailed to all patients on the spreadsheet on April 1, 2022 (see Exh. C, Decl. of Ezeume). Some patients turned over the checks and some paid the facility directly but the remaining patients did not. BCBSAZ deliberately concealed that they were not honoring the Assignment and not paying FHMC directly so the statute of limitations should be tolled.

Of note, prior to the implementation of the NSA, BCBSAZ was the only insurance provider wherein FHMC saw in their ER facilities that the payments were sent directly to the patients. (Decl. of Ezeume).

**P.  Plaintiffs' Count 12 - A.R.S. § 44-1521 – the Arizona Consumer Fraud Act**

Definition under A.R.S. § 44-1521 states "merchandise" is "any objects, wares, goods, commodities, intangibles, real estate or services." Arizona law creates a private right of action when there is a fraudulent sale of merchandise or services. See *Davis v. Bank of Am. Corp.*, No. CV 12-01059PHX-NVM, 2012 WL 3637903, at *4-5 (D.Ariz. August 23, 2012) (a case about a data breach and the court said there was no relationship between the Plaintiff and the breaching party). The three elements of a statutory fraud claim under the Arizona Consumer Fraud Act include a false promise or misrepresentation made in connection with the sale of merchandise and the plaintiffs' resulting and proximate injury.

*Loomis v. U.S. Bank Home Mortg.*, 912 F.Supp.2d 848 (D.Ariz.2012). A relationship between the Plaintiff and the breaching party is not necessary. A failure to disclose can constitute fraud if the defendant had a duty to disclose; the same is true of consumer fraud, negligence, and negligent misrepresentation. *Id.*

BCBSAZ's HMO membership guides state, "If you see a doctor or go to a clinic or emergency room that is not in your plan's network, you will be responsible for paying the full amount of your bill." (FAC ¶¶30 and 188). "For HMO plans, generally you only have coverage for services from out-of-network providers in emergency situations. You will have to pay the whole bill for most other services that are outside the plan's network."6 Therefore, any patient with an HMO who seeks care from an out of network facility such as FHMC expects to receive a bill from FHMC for the entire amount of their visit. This is not possible under and is a violation of the NSA.

BCBSAZ's PPO membership guides state, "Keep in mind, you will enjoy full coverage and lower costs by staying within your network. If you choose [OONPs], imaging facilities, or other healthcare professionals and they charge more than BCBSAZ's allowed amount, you will have to pay the difference. In some cases, [OONPs] may ask you to assign benefits to the provider, which would allow BCBSAZ to send the payment to them directly." (FAC¶¶31 and 189). This is also untrue because balance billing under the NSA is punishable by a $10,000 per incident fine. BCBSAZ does not honor the assignment of benefits and sent payments directly to members or did not in some instances send any payment to FHMC at all. The website containing these membership guides is a form of advertisement and a person does not have to login or gain special entry to see it. FHMC detrimentally relied upon representations that an assignment of benefits "would allow BCBSAZ to send the payment directly to them."

---

6 https://www.azblue.com/individuals-and-families/resources/aca-plan-information

BCBSAZ has sent patients EOBs stating that they owe the full balance of the billed amount to the provider against ACA and NSA laws, presumably as a scare tactic, which is also misrepresentation and fraudulent. (Decl. of Ezeume).

**Q.  Plaintiffs' Count 13 - Interference with Prospective Economic Advantage**

The elements to establish a viable tortious interference claim are: (1) a valid contract or business expectancy existed; (2) the interferer had knowledge of such business contracts or expectancy; (3) there was intentional interference causing a breach of the contract or business expectancy; and (4) resultant damages. *Neonatology Assocs., LTD. v. Phoenix Perinatal Assocs., Inc.*, 216 Ariz. 185, 187, ¶ 7, 164 P.3d 691, 693 (App.2007) (quoting *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 184 Ariz. 419, 427, 909 P.2d 486, 494 (App.1995)). Moreover, the interference must be intentional and "improper as to motive or means." Neonatology, 216 Ariz. at 188, ¶ 8, 164 P.3d at 694 (quoting Safeway Ins. Co. v. Guerrero, 210 Ariz. 5, 11, ¶ 20, 106 P.3d 1020, 1026 (2005)).

"I authorize direct payment to the Facility or to any independent contractor of any insurance benefits otherwise payable to or on behalf of myself." (FAC, Ex. A, pg. 3, ¶ 2). BCBSAZ knew this provision existed as part of FHMC's Conditions of Admission and Consent to Medical Treatment. FHMC properly sent EOBs and other billing information and requests for reimbursement for medical services rendered through the BCBSAZ electronic portal. BCBSAZ bypassed FHMC and sent checks for reimbursement to the patients directly without any explanation of what the checks were for or notice to FHMC. FHMC was forced to send collection letters to each patient who received a check causing discourse, animosity and

Further, after the NSA was implemented, FHMC followed proper procedures to submit billings to BCBSAZ including calculating the QPA. FHMC has a business expectation to be paid for the services previously rendered and rendered in the future to patients under the NSA. BCBSAZ knows FHMC has an expectancy to be properly reimbursed and has intentionally not followed NSA guidelines and proper calculation of the QPA. After a NSA claim is decided through IDR, BCBSAZ has failed and refused to pay or

deliberately underpaid the final decisions within 30 days as prescribed by the NSA guidelines. Some decisions have still not been paid even though months have gone by. FHMC has reasonable expectation BCBSAZ would follow the law and provide the payment and BCBSAZ is completely aware of the payment requirements.

Each of these situations were done by BCBSAZ deliberately to improperly increase their revenue and to avoid fee negotiations with FHMC. All of these actions have resulted in the damages delineated in Plaintiffs' FAC and its Exhibits.

### III. CONCLUSION

For the foregoing reasons, FHMC's First Amended Complaint should not be dismissed in its entirety and the suit should be allowed to go forward.

**RESPECTFULLY SUBMITTED** this 20th day of September, 2023.

*/s/ Grover C. Peters III*
Grover C. Peters III
*Attorney for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic filing which will send notification of such filing to:

Randy Papetti and Lauren A. Crawford, *Attorneys for Blue Cross and Blue Shield of Arizona, Inc.*

*/s/ Grover C. Peters III*
Grover C. Peters III
*Attorney for Plaintiffs*