**PAPETTI SAMUELS WEISS MCKIRGAN LLP**
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

**Randy Papetti** (State Bar No. 014586)
Direct Dial: 480.800.3525
Email: rpapetti@PSWMlaw.com

**Lauren A. Crawford** (State Bar No. 027792)
Direct Dial: 480.800.3538
Email: lcrawford@PSWMlaw.com

*Attorneys for Blue Cross Blue Shield of Arizona, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| FHMC, LLC; and FHMC Clinic, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> Blue Cross and Blue Shield of Arizona, Inc., <br><br> Defendant. | Case No. 23-cv-00876-GMS <br><br> **BCBSAZ'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> (Oral Argument Requested) |

FHMC's Response confirms it is seeking its billed charges for emergency medical services that BCBSAZ has already paid—the 2021 claims—and that are subject to the independent dispute resolution process required by the No Surprises Act—the 2022 and 2023 claims (the "NSA").[1] Each of FHMC's claims rest on the central allegation that BCBSAZ has under-reimbursed or failed to reimburse FHMC for emergency services rendered to BCBSAZ members under federal law or the terms of each member's respective health benefits plan or policy. FHMC's Response ignores, however, that under federal law, these claims ***must*** be decided through the designated independent dispute resolution process ("IDR"). FHMC concedes it has "not complained directly to CMS" except for "some of" the IDR cases it disagreed with, but contends "it is not a requirement to complain to CMS and [] there are really no other administrative

---

[1] Consistent with the First Amended Complaint (Dkt. 23, "FAC") and its Response in Opposition to Blue Cross Blue Shield, Inc.'s ("BCBSAZ") Motion to Dismiss, Plaintiffs FHMC, LLC and FHMC Clinic, LLC are referred to collectively as "FHMC." (Dkt. 26, "MTD" and Dkt. 29, "Resp." or "Response").

1 remedies to resolve the issues presented in this case." (Declaration of Dr. Ezeume
2 ("Decl.") ¶ 6.) FHMC is wrong.
3       The NSA directs health plans and out-of-network ("OON") providers to resolve
4 disputes over the price of OON services, first through informal negotiation and then, if
5 necessary, through IDR. *Id.* at §§ 300gg-111(a)(1)(C)(iv)(I) (health plan initial
6 payment), -111(c)(1)(A) (30-day open negotiation period), and -111(c)(1)(B) (IDR
7 initiation if negotiations are unsuccessful in the absence of state specified law).
8 "Determinations by the IDR entity are binding and not subject to judicial review, except
9 in cases of a fraudulent claim or evidence of misrepresentation of the facts presented to
10 the IDR entity." OMB Control No. 0938-0702 at 6. Otherwise, they are subject to review
11 only pursuant to the narrow circumstances described in the Federal Arbitration Act. 42
12 U.S.C. § 300gg-111(c)(5)(E).
13       Congress designed the IDR process to provide an efficient and streamlined means
14 of dispute resolution at a minimal cost. 42 U.S.C. § 300gg-111(c)(3)(A); *id*. § 300gg-
15 111(c)(4)(E); *see also Requirements Related to Surprise Billing, Part II*, 86 Fed. Reg.
16 55,980, at 59,996 and 56,001 (Oct. 7, 2021) (underscoring IDR's purpose of "efficiency"
17 and "predictability"). FHMC articulates no valid basis to ignore the statutory process
18 required. Instead, FHMC reads into the NSA a private right of action that does not exist.
19 For these reasons and those discussed herein, FHMC's FAC should be dismissed in its
20 entirety for failure to state a claim on which relief may be granted.
21 **I.    FHMC'S NEW ALLEGATIONS ARE PROCEDURALLY IMPROPER.**
22       In its Response, FHMC provides a "counter" statement of facts, new allegations
23 (that in most instances attempt to supplement and/or contradict its pleading), and a
24 witness declaration.[2] Arguments raised in an opposition to dismissal do not cure

---

[2] Much of the Declaration is focused on BCBSAZ's alleged improper actions in the IDR process and purported "sham" QPA rate. For purposes of this Reply (and FHMC's future reference), it is useful to clarify that FHMC's repeated reference to BCBSAZ's QPA calculations as a "sham" is simply inaccurate. If a provider seeks an IDR entity's review of more than one service provided to a patient for a single encounter, the provider must

Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

defective pleading. Even if the Court considered the allegations outside of the FAC, none of the new allegations stave off the conclusion that FHMC is unable to plead viable claims for relief against BCBSAZ.

For example, FHMC's pleading is inconsistent with its Response when discussing its OON status. *Compare* FAC at ¶ 3 (stating FHMC "is not contracted with any insurance company") *with* Resp. at 2 n.1 (stating "FHMC is not exclusively out [sic] OONP for all networks"). Likewise, FHMC's pleading and Response are inconsistent regarding documentation supporting its claims. *Compare* FAC at ¶ 34 ("[] Assignments for the individuals for whom FHMC seeks reimbursement for non or under payment by BCBSAZ have been compiled as well and will be disclosed under seal during discovery or at the request of the Court.") *with* Decl. at ¶ 5 ("If the court were to order that we provide a copy of each and every Consent form . . . I would request a neutral third party be appointed to retrieve the records from our facility **at the Defendant's expense**.") (emphasis added). FHMC complains it would be "unduly burdensome to gain consent from patients . . . to be submitted to CMS[.]" (Decl. ¶ 6.) This statement undercuts FHMC's argument that it already has executed consents.[3] (FAC ¶ 34.)

When deciding a Rule 12(b)(6) motion, the Court looks only to the face of the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

---

submit each procedure code for review. *See* January 2023, IDR Notice of Initiation Web Form at § 4.1 (line item information) available at: https://www.cms.gov/files/document/idr-notice-initiation-job-aid.pdf. If instead, the provider only submits one procedure code where an encounter included dozens, the non-initiating party provides the QPA for one procedure code. For example, where FHMC initiates IDR for a multiple-procedure encounter, lists only one procedure code, and submits its billed charges for the entire patient encounter, BCBSAZ only calculates the QPA for the single procedure code FHMC has submitted for IDR.

[3] When submitting an IDR request, a party certifies: "By submitting a billing complaints form, you represent that you have permission from all of the people whose information is on the form to submit their information to CMS, and receive any communications about their complaint, statuses, and decision from CMS and entities operating on its behalf or other federal and state agencies who may be required to assist in researching and resolving your complaint." *See* https://nsa-idr.cms.gov/providercomplaints/s/.

3

As such, the Court should disregard FHMC's new and contradictory allegations. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F.Supp.3d 1011, 1021 (C.D. Cal. 2015) ("Courts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice."). Additionally, FHMC does not request the Court take judicial notice of any facts in the Declaration.

## II.   NEITHER THE NSA NOR THE ACA CONFER A RIGHT OF ACTION.

FHMC argues that both the NSA and ACA "provide an implied private right of action," because "the insurer is the focus of the regulation" and OON providers "are conferred certain rights" under both the NSA and ACA and "should be entitled to sue BCBSAZ and request any and all remedies available under law." (Resp. at 5:17; 6:15-17; 7:12-15; 8:16-18.) FHMC's "implied right" arguments are outside the scope of its pleading and not supported by anything other than conclusory argument. Even if FHMC had analyzed whether an implied right of action exists for either the NSA or ASA, its claims would fail because no implied right of action exists under either federal statute.

FHMC does not provide any authority in support of its new allegation that the NSA and ACA provide it with an *implied* right of action. (Resp. at 6:15-8:26.) Although FHMC provides the factors courts often consider when analyzing whether an implied right of action exists, it fails to then explain how the factors support its incorrect assertion that either federal statute contains an implied private right of action that permits it to bypass the IDR process or "appeal" the outcome via a complaint to this Court.[4] (*Id.*) Consequently, FHMC has waived its "implied right" by failing to support it

---

[4] A court considers whether: (1) plaintiff is of the class for whom the statute was enacted; (2) there is legislative intent to create or deny a remedy; (3) creation of a remedy is consistent with purposes of the legislative scheme; and (4) the cause of action is one traditionally relegated to state law. *See Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 2023 WL 5763344, at **2-3 (9th Cir. Sept. 7, 2023) (affirming the district court's dismissal of a provider's complaint for failure to state a claim, reasoning that the CARES Act does not provide an implied right of action for a provider to sue an insurer).

4

with analysis or authority. *F.D.I.C. v. Garner*, 126 F.3d 1138, 1145 (9th Cir. 1997) (finding that the court may conclude that a party that presents no applicable case law in support of an argument waives it); *see also* LRCiv 7.2(i) (stating that the Court may summarily dispose of a motion based on non-compliance).

      Even if FHMC had adequately at least addressed either its NSA or ACA "implied-right" argument, both arguments would fail on the merits. Neither the NSA nor the ACA include language in their respective statutory schemes that evidences congressional intent to create a right of action for providers to sue their patients' insurance companies. *See Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1170 (9th Cir. 2013) ("Because the Supreme Court has elevated intent into a supreme factor, we start there and . . . presume that Congress expressed its intent through the statutory language it chose."). The intent of the NSA is to protect patients from surprise medical bills for emergency care and for non-emergency by OON providers and facilities. *See* 42 U.S.C. §§ 300gg-112, -131, & -132. The intent of the ACA is to make affordable health insurance available to more people. 42 U.S.C. §§ 18001, *et seq.* Neither the NSA nor the ACA's intent was to provide private rights of action to OON providers like FHMC.[4]

      The IDR process "will apply for purposes of determining the [OON] rate with respect to items and services furnished to individuals in an insured group health plan, or group or individual health insurance coverage in Arizona by nonparticipating providers, nonparticipating emergency facilities[.]" Feb. 23, 2022 Centers for Medicare & Medicaid Services ("CMS") letter re: enforcement and dispute resolution.[5] "CMS will enforce the outcome of the federal independent dispute resolution process for such cases in Arizona." *Id.* This structure does not contemplate a private right of action.

---

[4] Congressional intent is a "supreme factor" and the other three factors are analyzed to determine congressional intent. *Id.*

[5] Available at: https://www.cms.gov/files/document/caa-enforcement-letters-arizona.pdf

### III. THE ASSIGNMENT DOES NOT CONFER RIGHTS ON FHMC.

#### A. The Assignment.

FHMC does not dispute the Assignment does not name either FHMC Clinic, LLC or FHMC, LLC as assignees (or name either entity at all). (Resp. at 9:1-10.) Instead, FHMC contends its Assignment is sufficient to assign all members' rights and benefits for both ERISA and non-ERISA claims because the top of the letterhead states "Fountain Hills Medical Center," which is a registered tradename of FHMC Clinic, LLC.[6] (*Id.*) FHMC is wrong.

To be effective, an assignment must contain all essential terms, including the assignee and assignor. Although the Ninth Circuit does not require "terms of art . . . for a valid assignment," the assignee must provide proof an assignment occurred. *See United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 748 (9th Cir. 1993). "[G]eneral contract principles dictate that to prove an effective assignment, the assignee must come forth with evidence that the assignor meant to assign rights and obligations under the contracts." *Britton v. Co–op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993) (citing RESTATEMENT (SECOND) OF CONTRACTS § 317(1), 324 (1981)).

Even read in a view most favorable to FHMC, to the extent it is construed as an authorization of direct payment of benefits (which it is not), such an authorization does not rise to the level of a valid assignment. *See, e.g., Brand Tarzana Surgical Inst., Inc. v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan,* 706 F. App'x 442, 443 (9th Cir. 2017) (affirming the district court's finding that there was no valid assignment of benefits because "nothing about the direct payment clauses suggests that providers, rather than beneficiaries, are entitled to sue the Plan over the breach of its obligation to make direct payments").

---

[6] FHMC asserts that "BCBSAZ has not alleged the existence of any anti-assignment clauses" prohibiting assignment of a member's claim to FHMC. (Resp. at 9:15.) As the Defendant, BCBSAZ has not filed a pleading where it would make such allegations. In its MTD, BCBSAZ did, however, state that many of the plans at issue contain valid and enforceable anti-assignment provisions. (MTD at 9, n.8.)

6

Ignoring that the Assignments do not name either FHMC Clinic, LLC or FHMC, LLC as assignor, FHMC asserts that the Assignment provides "no limitations on the type of insurer or circumstances regarding a payor" and, as a result, FHMC's assignment is valid for ERISA and non-ERISA claims. (Resp. at 10.) But, "a non-participant health care provider cannot bring claims for benefits on its own behalf. It must do so derivatively, relying on its patients' assignments of their benefits claims." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014). Because the Assignment fails to name either as an assignee of any rights of its patients, neither entity holds a valid assignment of any of its patients' rights.

### B. The Power of Attorney Provision.

FHMC does not argue that the power of attorney ("POA") provision complies with A.R.S. § 14-5501(D). Instead, FHMC contends that the POA executed by members are "powers coupled with an interest" under A.R.S. § 5501(E), which exempt them from the execution requirements set forth in A.R.S. § 14-5501(D). (Resp. at 10:14-18.) First, the POA does not name either FHMC Clinic, LLC or FHMC, LLC. Next, the POA provisions are not powers coupled with an interest that would exempt FHMC from following the formalities imposed by Arizona law.

Like the Assignment, the POA provision fails to name either FHMC, LLC or FHMC Clinic, LLC. Under Arizona law, POAs "should be strictly construed and the courts should never by construction extend the power they confer beyond that given in terms, or is absolutely necessary to carry that conferred into effect." *Lighting Delivery Co. v. Matteson*, 39 P.2d 938, 941 (Ariz. 1935); *see also Testa v. Emeritus Corp.*, 167 F. Supp. 1103, 1112 (N.D. Ill. 2016) (interpreting Arizona law and holding that POAs must be construed narrowly). Reading in FHMC, LLC or FHMC Clinic, LLC where neither entity was initially included does not meet Arizona's requirements that a POA should be strictly construed.

A power coupled with an interest means "a power that forms part of a contract and is security for money or the performance of a valuable act." A.R.S. § 14-5501(E).

7

On the other hand, a general POA is "a written instrument by which a principal designates another person as the principal's agent." *Weinstein v. Weinstein*, 326 P.3d 307, 317 (Ariz. 2014) (quotation marks omitted). The latter is precisely the nature of the POA FHMC contends it entered with its patients and the BCBSAZ members, as they enumerate powers that FHMC would perform as the members' agents: "pursue any claim, penalties, and administration a/or [sic] legal remedies *for collection* against and [sic] responsible payer[.]" (FAC at Ex. A) (emphasis added).

FHMC argues the POA provision is included in the "Conditions of Admission and Consent to Medical Treatment" form that "is a contract that secures payment for performance of valuable medical services." (Resp. at 10:14-17.) But the paperwork also includes a form stating that the patient is "responsible for any unpaid balance." (FAC at Ex. A ("Patient Responsibility to pay for services and return direct insurance payments to the Medical Center"). The same form also provides:

> I understand that my insurance company might send me a check for the services provided here. I agree without reservation to send all checks sent to me from the insurance company immediately to Fountain Hills Medical Center. I understand that such checks are legally due to the Medical Center for services provided and the [sic] I can be subject to legal action if I do not transfer any such checks or payments to the Medical Center.

(*Id.*) (emphasis added).

A POA coupled with an interest "is not merely an interest in the exercise of the power, but an interest in the property over which the power operates." *Weinstein*, 326 P.3d at 317. FHMC has not alleged—and cannot allege—any interest in a property over which the POA operates. Instead, the POA executed by the patients identify specific acts that FHMC would undertake as the members' agents. Put differently, a power given as security "is given to protect a legal or equitable title or to secure the performance of a duty apart from any duties owed the holder of the power by its creator that are incident to a relationship of agency." 6 RESTATEMENT (THIRD) OF AGENCY § 3:12. The powers of attorney at issue were not powers coupled with an interest.

8

### IV.     FHMC'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW.[7]

Even if the claims for which FHMC seeks reimbursement were not subject to the IDR process under the NSA (they are) and FHMC held valid and enforceable assignments of benefits for each claim (it does not), FHMC's state law claims fail to state claims on which relief may be granted for a variety of additional reasons as set forth below and in BCBSAZ's MTD. Where FHMC has either insufficiently addressed or not addressed the argument in BCBSAZ's MTD, BCBSAZ incorporates by reference the arguments as set forth in its MTD. (*See* MTD at § IV, 7-17.)

Breach of contract. By way of its (invalid) Assignment, FHMC contends that the members' insurance plans or federal law provides coverage for medical expenses, FHMC submitted billings for medical services which were "unpaid or underpaid," and therefore BCBSAZ breached its agreement with its members. (Resp. at 10:23-28.) FHMC's claims fail because they are premised on the incorrect notion that federal law or a member's health insurance plan or policy required BCBSAZ to reimburse all emergency care or services at FHMC's unilaterally set billed charges.

Breach of the implied covenant. FHMC claims its breach of the implied covenant claim is "entirely sufficient" because it stands in its patients' shoes via the Assignment. (Resp. at 11:12-26.) Even assuming FHMC's Assignment is valid (it's not), FHMC's Response does not explain how BCBSAZ breached the implied covenant and fails to state a claim on which relief may be granted as discussed in the MTD. (MTD at 10-11.)

Promissory estoppel. FHMC claims it "detrimentally relied" on representations BCBSAZ allegedly made to "FHMC's billing agents . . . that the medical treatment sought" was covered under an active insurance plan "and that the fees associated with the nature of the treatment were covered charges" under the respective members' plans.

---

[7] FHMC exceeds the 17-page limit permitted for a response. *See* LRCiv 7.2(e)(1) (providing that a motion and response may not exceed 17 pages unless permitted by the Court). FHMC's argument in opposition to BCBSAZ's request for dismissal of its tortious interference claim appears on page 18. If the Court elects to consider this argument, it fails for the reasons set forth in Section IV.

9

1  (Resp. at 12:9-14.) FHMC fails to address the authority cited in the MTD dismissing
2  promissory estoppel claims for failure to state a claim because verifications of benefits
3  are not sufficiently definitive promises. (MTD at 11-12.)

4  <u>A.R.S. § 20-462</u>. FHMC asserts BCBSAZ owes prejudgment interest on the 2021
5  claims BCBSAZ has already paid to its members because the members failed to provide
6  the checks to FHMC. (Resp. at 14:6-8.) FHMC does not cite any authority to support its
7  claims, but instead contends it is "standard practice" that a provider is paid directly and
8  "common knowledge" that providers obtain assignments from their patients to receive
9  payment directly. (*Id.* at 14:9-12.) Alleged violation of standard practices does not create
10 a viable cause of action against BCBSAZ.

11 <u>A.R.S. § 20-443</u>. FHMC argues the one-year statute of limitations should be
12 equitably tolled, but renders its own argument useless when it states it discovered
13 BCBSAZ's purported "misrepresentations and false disclosures" in August 2021, nearly
14 two years prior to filing its complaint. (Resp. at 16:4-15; *see* Dkt. 1, May 18, 2023.)

15 For the reasons discussed above and those more fully addressed in the MTD,
16 hereby incorporated by reference, FHMC's state law claims fail.

17 **V.   AMENDMENT WOULD BE FUTILE AND SHOULD BE DENIED.**

18 FHMC does not request leave to file an amended pleading. Even if FHMC
19 requested leave, amendment would be futile and should be denied. *See Navajo Nation v.*
20 *Office of Navajo & Hopi Indian Relocation*, 631 F. Supp. 3d 776, 803 (D. Ariz. 2022)
21 (denying leave to amend where plaintiff did not request leave because claims were
22 legally deficient and such deficiencies could not be cured through amendment); *but see*
23 *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (suggesting that in some
24 circumstances, "a district court should grant leave to amend even if no request to amend
25 the pleading was made").

26 For the foregoing reasons, FHMC's FAC should be dismissed in its entirety
27 without leave to amend. Any effort to amend would be futile because BCBSAZ has
28 already paid the 2021 claims and the 2022 and 2023 claims are subject to IDR. No

amendment would enable FHMC to state claims against BCBSAZ on which relief may be granted.

  RESPECTFULLY SUBMITTED this 27th day of September, 2023.

          PAPETTI SAMUELS WEISS MCKIRGAN LLP

          /s/   *Lauren A. Crawford*
          Randy Papetti
          Lauren A. Crawford

          *Attorneys for Blue Cross Blue Shield of Arizona, Inc.*


Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 27th day of September, 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Grover C. Peters
Fountain Hills Medical Center
9700 N. Saguaro Blvd.
Fountain Hills, AZ 85268
grover@fhmcaz.com
*Attorney for Plaintiffs*

                                        /s/ Lauren A. Crawford